

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____

**Signed December 11, 2020**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 19-41108-ELM |
| THEAG NORTH ARLINGTON LLC, *et al*., | § | Chapter 11 |
| | § | (Jointly Administered) |
|     Debtors. | § | |
| CHRIS TAYLOR and JEAN-ANN TAYLOR, | § | |
|     Plaintiffs, | § | |
| v. | § | |
| | § | |
| CHRISTOPHER ALLEN, SEAN ALLEN, | § | |
| DAWN BERRY and APRIL CROSSE, | § | |
|     Defendants/Third-Party Plaintiffs, | § | |
| v. | § | |
| | § | |
| STEARNS BANK, N.A., | § | |
|     Third-Party Defendant. | § | Adversary No. 19-04034 |
| THEAG NORTH DALLAS LLC, THEAG | § | |
| NORTH ARLINGTON LLC and THEAG | § | |
| MANAGEMENT LLC, | § | |
|     Intervenors, | § | |
| v. | § | |
| | § | |
| CHRIS TAYLOR and JEAN-ANN TAYLOR, | § | |
|     Plaintiffs, | § | |
| and | § | |
| | § | |
| STEARNS BANK, N.A., | § | |
|     Third-Party Defendant. | § | |

## MEMORANDUM OPINION

This removed action from Texas state court involves a dispute arising out of the 2016 sale of a franchised FASTSIGNS® business owned by Plaintiffs Chris and Jean-Ann Taylor (together, the "**Taylors**") by and through certain of their wholly owned companies to Defendants Christopher and Sean Allen (together, the "**Allens**") by and through certain of their affiliated companies, including the debtor intervenors THEAG North Dallas LLC, THEAG North Arlington LLC and THEAG Management LLC (collectively, the "**Debtor Intervenors**"). In 2018, the Taylors initiated litigation against the Allens and their respective spouses Dawn Berry and April Crosse (the Allens and their spouses, collectively, the "**Allen Defendants**") to pursue collection on a guaranty executed in connection with the sale. Thereafter, the Debtor Intervenors intervened in the action and both the Debtor Intervenors and the Allen Defendants asserted a variety of claims against the Taylors and Third-Party Defendant Stearns Bank, N.A. (the "**Stearns**"). Following the Debtor Intervenors' filing for bankruptcy protection, the Debtor Intervenors removed the litigation to this Court, thereby initiating the above-captioned adversary proceeding.

Now before the Court for determination are the motions to dismiss filed by the Taylors and Stearns in relation to the Allen Defendants' *Second Amended Counterclaim and Third-Party Complaint* [Docket No. 46] (the "**Defendants' Live Pleading**") and the Debtor Intervenors' *Amended Petition in Intervention, Third-Party Petition, and Request for Disclosure* [Docket No. 45] (the "**Intervenors' Live Pleading**" and together with the Defendants' Live Pleading, the "**Live Pleadings**"). Specifically, the Taylors have filed their *Motion to Dismiss Intervenors' Amended Complaint and Defendants' Second Amended Counterclaim* [Docket No. 49] (the "**Taylor Motion**"); Stearns has filed its *Motion to Dismiss or For More Definite Statement and Brief in Support Thereof* [Docket No. 52] in relation to the Defendants' Live Pleading (the "**Stearns Defendant Claim Motion**"); and Stearns has filed its *Second Motion to Dismiss or For More*

*Definite Statement and Brief in Support Thereof* [Docket No. 53] in relation to the Intervenors'

Live Pleading (the "**Stearns Intervenor Claim Motion**").

Having considered the Live Pleadings; the Taylor Motion and filings in support thereof,[1]

the responses of the Allen Defendants and the Debtor Intervenors thereto,[2] and the Taylors' reply;[3]

the Stearns Defendant Claim Motion, the Allen Defendants' response thereto,[4] and Stearns' reply;[5]

the Stearns Intervenor Claim Motion, the Debtor Intervenors' response thereto,[6] and Stearns'

reply;[7] and the arguments of counsel; for the reasons set forth herein the Court will grant in part,

and deny in part, the Taylor Motion; grant in part, and conditionally grant in part subject to the

right to replead, the Stearns Defendant Claim Motion; and grant in part, and conditionally grant in

part subject to the right to replead, the Stearns Intervenor Claim Motion.

### *JURISDICTION*

The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and

157 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*

*(Miscellaneous Rule No. 33)* of the United States District Court for the Northern District of Texas.

Venue of the proceeding in the Northern District of Texas is proper under 28 U.S.C. § 1409. The

proceeding is both core and non-core in nature within the meaning of 28 U.S.C. § 157(b)(2).

Pursuant to 28 U.S.C. §§ 157(b)(1) and (c)(2) and based upon the parties' consent to this Court's

entry of a final order or judgment on all non-core claims and their knowing and voluntary waiver

---

[1] *See* Docket Nos. 50 ("**Plaintiffs' Brief**") and 51 ("**Plaintiffs' Appx.**").

[2] *See* Docket Nos. 60 ("**Defendants' Plaintiff Motion Response**") and 61 ("**Intervenors' Plaintiff Motion Response**").

[3] *See* Docket No. 63.

[4] *See* Docket No. 59 ("**Defendants' Stearns Motion Response**").

[5] *See* Docket Nos. 65 and 67.

[6] *See* Docket No. 62 ("**Intervenors' Stearns Motion Response**").

[7] *See* Docket Nos. 64 and 66.

of the right to the adjudication of non-core claims by an Article III court, this Court may enter a final order or judgment in this action.[8]

## FACTUAL BACKGROUND

Prior to the sale at issue in this case, the Taylors owned and operated a FASTSIGNS® franchised sign production business (the "**Business**") through their wholly-owned companies C.J. Taylor, Ltd., G.P. Taylor Enterprises, Ltd., CTMM Management, LLC and CJT Real Estate, LLC a/k/a CJ Taylor Real Estate, LLC (collectively, the "**Taylor Entities**"). The Business was run out of three locations: the North Arlington FastSigns Store (the "**Arlington Store**"); the North Dallas FastSigns Store (the "**Dallas Store**"); and the Denton FastSigns Store (the "**Denton Store**" and together with the Arlington Store and Dallas Store, the "**Stores**").

### A.      *The Taylors and Allens Execute a Letter of Intent*

In 2014, the Taylors and Allens began to engage in negotiations with respect to the Taylors' sale of the Business to the Allens. Ultimately, the Taylors and Allens executed a Letter of Intent, dated July 2015 (the "**LOI**"), pursuant to which the Taylors evidenced their intent to sell, and the Allens evidenced their intent to purchase, the Business for $5.75 million, subject to offsets and deductions to be negotiated, and subject to due diligence, franchisor approval, and the preparation of mutually acceptable definitive documentation.[9] Several provisions of the LOI are either directly or indirectly referenced by or relevant to the Live Pleadings and are therefore highlighted herein.

First, the LOI called for the Allens to designate an entity substantially owned and controlled by them to serve as the so-called "Purchasing Entity" in relation to the contemplated transaction.[10]

---

[8] *See, e.g.,* Docket Nos. 10, 11 and 13; *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1942-48 (2015) (permitting final adjudication of non-core claims by bankruptcy court where there is a knowing, voluntary waiver of the right to adjudication by an Article III court).

[9] *See* Defendants' Live Pleading, ¶ 24; Intervenors' Live Pleading, ¶ 22; Plaintiffs' Appx. 36-40.

[10] *See* Plaintiffs' Appx. 36 (introductory paragraph).

The Allens would later designate the Debtor Intervenors and THEAG Denton LLC (together with the Debtor Intervenors, the "**THEAG Entities**") to serve as the Purchasing Entity.

Second, Section 4 of the LOI provided for the parties to promptly agree upon a "Due Diligence Checklist" and for the Taylors to then promptly "allow Purchasing Entity to complete an examination of Seller's financial, accounting and business records, contracts and other legal documents and generally to complete due diligence as set forth in the Due Diligence Checklist, which shall take place in the forty-five (45) days immediately following the parties executing this Letter of Intent (the 'Due Diligence Period')."[11]

Third, Section 3 the LOI required the Allens to arrange for an earnest money deposit of $287,500 (the "**Earnest Money Deposit**") to be made by the Purchasing Entity within seven business days of execution of the LOI.[12] In compliance with the requirement, the Allens arranged for the Earnest Money Deposit to be made by or on behalf of the THEAG Entities.[13]

Finally, Section 6 of the LOI provided for disposition of the Earnest Money Deposit. Among other things, it provided that should the Purchasing Entity terminate the LOI for any reason after expiration of the Due Diligence Period, or should the transaction contemplated by the LOI fail to close by August 31, 2015, then the escrow agent was to pay the Earnest Money Deposit to the Taylors.[14] The parties later amended the LOI to extend the outside closing date to September 30, 2015 as a result of a delay encountered in obtaining franchisor approval for the transaction.[15]

---

[11] Plaintiffs' Appx. 37-38 (§ 4).

[12] *See* Plaintiffs' Appx. 37 (§ 3).

[13] Defendants' Live Pleading, ¶ 24; Intervenors' Live Pleading, ¶ 22.

[14] *See* Plaintiffs' Appx. 38-39 (§ 6).

[15] *See* Plaintiffs' Appx. 41-42.

**B.** *The Parties Execute the Definitive Asset Purchase Agreement*

Ultimately, the Taylor Entities and the Allens entered into a definitive Asset Purchase Agreement, effective as of September 9, 2015 (the "**APA**").[16] As with the LOI, several provisions of the APA are either directly or indirectly referenced by or relevant to the Live Pleadings and are therefore highlighted herein.

First, with respect to the financial terms of the transaction, the previously agreed-upon purchase price of $5.75 million was to be satisfied as follows under the terms of the APA: (a) release of the $287,500 Earnest Money Deposit to the Taylor Entities on the Closing Date; (b) payment of $5.175 million in immediately available funds to the Taylor Entities on the Closing Date (the "**Cash Payment**"); and (c) the delivery of a promissory note made payable to the Taylors in the original principal amount of $287,500 (the "**Promissory Note**") on the Closing Date.[17] The Taylor Entities and Allens also agreed to an allocation of the purchase price within the APA, with over $4.0 million of the purchase price allocated to the goodwill of the Stores.[18]

Second, as security for payment of the Promissory Note, the APA also conditioned closing on the delivery of a personal guaranty by the Allen Defendants for the benefit of the Taylors (the "**Guaranty**").[19]

Third, under the terms of the APA, the Taylor Entities agreed to the following post-closing non-compete protections:[20]

Seller [the Taylor Entities] and Seller's principal, Christopher J. Taylor, and the wife of Christopher J. Taylor, Jean-Ann Taylor (collectively, "*Seller's Principal*"), agree that for a period of two (2) years from and after the Closing Date, neither it,

---

[16] *See* Plaintiffs' Appx. 14-146.

[17] *See* Plaintiffs' Appx. 15-16 and 43-47 (§ 2.2(a) and Exh. D (promissory note)).

[18] *See* Plaintiffs' Appx. 16 and 92 (§ 2.2(b) and Schedule 2.2(b)); *see also* Defendants' Live Pleading, ¶ 14; Intervenors' Live Pleading, ¶ 14.

[19] *See* Plaintiffs' Appx. 25 and 48-55 (§ 9.2(a)(ix) and Exh. E (personal guaranty)).

[20] Plaintiffs' App. 26 (§ 10.7); *see also* Defendants' Live Pleading, ¶ 36; Intervenors' Live Pleading, ¶ 34.

nor Seller's Principal, will own, manage, operate, provide consulting services to, or control any business engaged in sign production (b) [sic] within a forty (40) mile radius of (i) Seller's current Business locations or (ii) any other location in which Purchaser operates a business engaged in sign production. In addition, Seller and Seller's Principal agree that for the same two (2) year period they will not directly or indirectly (a) solicit, induce, encourage or attempt to persuade any … customer … or any other person having a commercial relationship with the Business to terminate, curtail or cancel his/her or its relationship with Purchaser, [or] (b) in any way interfere with any such relationship….

Fourth, pursuant to Section 12.1 of the APA, the Purchaser could terminate the APA at any time prior to the Closing Date (September 30, 2015 or such other date mutually agreed upon in writing)[21] "if any representation … of Seller [the Taylor Entities] contained in [the APA] or in any … other document … delivered by Seller pursuant to [the APA] is or becomes untrue … in any material respect … and any such misrepresentation … is not cured, waived or eliminated within ten (10) days."[22] Similarly, the Purchaser could terminate the APA on the Closing Date in the absence of satisfaction of each of the conditions of Article VII of the APA,[23] including that all of "[t]he representations … of Seller contained [in the APA] shall have been true and correct in all respects when initially made and shall be true and correct in all respects as of the Closing Date."[24] Among such representations are the representations included within Section 3.9 of the APA:

Seller [the Taylor Entities] has furnished to Purchaser Seller's balance sheet and related statements of income for 2012, 2013, 2014 and through August 31, 2015, for the Business (collectively, the "*Financial Statements*") as set forth in Schedule 3.9.[25] To the best of the Seller's knowledge, the Financial Statements are true and correct in all materials respects, and, in accordance with the books and records of

---

[21] *See* Plaintiffs' Appx. 14-15 (§§ 1.1(c)-(d) (definitions of "Closing" and "Closing Date") and § 2.1 (provision for purchase and sale of Assets).

[22] *See* Plaintiffs' Appx. 27 (§ 12.1(b)).

[23] *See* Plaintiffs' Appx. 27 (§ 12.1(d)).

[24] *See* Plaintiffs' Appx. 22 (§ 7.1).

[25] Schedule 3.9 simply states "As previously delivered to Purchaser" without any additional detail. *See* Plaintiffs' App. 95.

Seller, fairly present the financial condition and results of operations of Seller as of the dates and for the periods indicated.[26]

Finally, under the termination provisions of the APA, in the event of the APA's termination by either party for any reason, or in the event of the failure of the transaction to close by September 30, 2015 for any reason, the Earnest Money Deposit would be subject to disbursement in accordance with the terms of the LOI.[27]

## C.   *The Sale Closes*

Ultimately, the parties determined to proceed with the transaction subject to certain modifications to the APA.  The modifications were made by an amendment, dated February 24, 2016, executed by the Taylor Entities, the Allens and the THEAG Entities, pursuant to which: (a) the Allens assigned all of their rights under the APA to the THEAG Entities; (b) the purchase price payment provisions of the APA were modified to reduce the Cash Payment obligation to $4.525 million and correspondingly increase the amount of the Promissory Note to $937,500; and (c) as additional security for payment of the Promissory Note (i) all post-closing cellular tower lease payments under a particular lease specified within the amendment would be assigned to the Taylor Entities[28] in partial satisfaction of the Promissory Note until the time of the Promissory Note's payment in full, and (ii) all royalty payment rebates from the franchisor beginning as of January 2016 would be made payable to the Taylor Entities[29] in partial satisfaction of the Promissory Note until the time of the Promissory Note's payment in full.[30]

---

[26] Plaintiffs' App. 18 (§ 3.9).

[27] *See* Plaintiffs' Appx. 27 (§ 12.1(h)).

[28] Presumably for the benefit of the Taylors, inasmuch as the Promissory Note was to be made payable to the Taylors.

[29] *See* footnote 28.

[30] *See* Plaintiffs' Appx. 4-9.

Ultimately, the sale closed at the end of February 2016.[31]  In connection with the closing, the THEAG Entities executed the Promissory Note made payable to the Taylors in the original principal amount of $937,500[32] and the Allen Defendants executed the Guaranty.[33]  With respect to the Cash Payment, the THEAG Entities made the payment out of proceeds of a $4,943,500 loan obtained from Stearns (the "**Stearns Loan**").[34]

D.  *The Taylors Initiate Collection Litigation Under the Guaranty and the Allen Defendants and Debtor Intervenors Respond*

Under the terms of the Promissory Note, the THEAG Entities were required to make a one-time lump sum payment of $1,033,594 on the Maturity Date of December 31, 2017.[35]  In September 2018, after the THEAG Entities allegedly failed to make the payment, the Taylors initiated litigation against the Allen Defendants in the 44th District Court of Dallas County, Texas (the "**State Court**") to pursue recovery under the Guaranty.[36]

On March 12, 2019, the Debtor Intervenors filed a petition in intervention (the "**Intervenors' Original Petition**") to assert claims of breach of contract, fraud, conspiracy to commit fraud, and tortious interference with contract against the Taylors (collectively, the "**Original Intervention Claims**") and claims of breach of contract, fraud and conspiracy to commit fraud against Stearns (collectively, the "**Original Intervenor Third-Party Claims**").[37] The next day, on March 13, 2019, the Allen Defendants followed suit with the filing of their

---

[31] *See* Defendants' Live Pleading, ¶ 14; Intervenors' Live Pleading, ¶ 14.

[32] *See* Plaintiffs' Appx. 44-47.

[33] *See* Plaintiffs' Appx. 49-55; *see also* Defendants' Live Pleading, ¶¶ 19 and 22; Intervenors' Live Pleading, ¶ 20.

[34] *See* Defendants' Live Pleading, ¶ 19; Intervenors' Live Pleading, ¶ 20.

[35] *See* Plaintiff's Appx. 44.

[36] *See* Docket No. 1-2, at pp. 2-6 (Taylors' Original Petition).

[37] *See* Docket No. 6 (copy of the Intervenors' Original Petition re-docketed in the adversary proceeding).

Counterclaim and Third-Party Petition to assert various claims against both the Taylors and Stearns.[38]

Shortly thereafter, on March 18, 2019, each of the Debtor Intervenors filed for voluntary chapter 11 bankruptcy relief with this Court, and then on March 22, 2019, removed the State Court case to this Court based upon the pendency of the bankruptcy cases, thereby initiating the current adversary proceeding. On May 15, 2019, the Allen Defendants filed their Amended Counterclaim and Third-Party Complaint (the "**Defendants' First Amended Pleading**") to assert claims of common law fraud and conspiracy to commit fraud against the Taylors (collectively, the "**Original Counterclaims**") and claims of common law fraud and conspiracy to commit fraud against Stearns (collectively, the "**Original Defendant Third-Party Claims**").[39]

**E.    *The First Round of Dismissal Motions and Orders in Relation Thereto***

In response to the Defendants' First Amended Pleading and the Intervenors' Original Petition, the Taylors timely filed a motion to dismiss each of the Original Counterclaims and Original Intervention Claims.[40]   In response to the Intervenors' Original Petition, Stearns also timely filed a motion to dismiss each of the Original Intervenor Third-Party Claims.[41]   In each case, the motions sought dismissal of the claims for failure to plead with particularity and/or for failure to state a claim upon which relief can be afforded, as applicable. Both the Allen Defendants and the Debtor Intervenors (collectively, the "**THEAG Parties**") responded in opposition to the motions.

---

[38] *See* Docket No. 1-2, at pp. 310-325 (Allen Defendants' original counterclaim and third-party petition).

[39] *See* Docket No. 17.

[40] *See* Docket No. 22.

[41] *See* Docket No. 24.

On July 18, 2019, the Court conducted a hearing on the first round of dismissal motions. After entertaining arguments of counsel, the Court orally ruled that the Debtor Intervenors' breach of contract claim against the Taylors would be dismissed with prejudice, but that all other Original Intervention Claims, as well as all Original Counterclaims and all Original Intervenor Third-Party Claims, would be conditionally dismissed subject to the right of the Allen Defendants or Debtor Intervenors, as applicable, to replead such claims by August 16, 2019. By agreement between the Allen Defendants and Stearns, the Allen Defendants were also given the opportunity to replead the Original Defendant Third-Party Claims by the same deadline. Shortly thereafter, the Court entered orders to effectuate both the ruling and the Allen Defendants-Stearns agreement (collectively, the "**Dismissal Orders**").[42]

## F.      The THEAG Parties Assert a New Round of Claims

On August 16, 2019, the Allen Defendants filed the Defendants' Live Pleading and the Debtor Intervenors filed the Intervenors' Live Pleading. Instead of only repleading the claims subject to conditional dismissal and the Allen Defendants-Stearns agreement, however, the Allen Defendants asserted eight new claims against the Taylors and four new claims against Stearns, and the Debtor Intervenors asserted nine new claims against the Taylors and five new claims against Stearns.

Specifically, pursuant to the Defendants' Live Pleading, the Allen Defendants now assert the following counterclaims against the Taylors (collectively, "**Live Counterclaims**") and third-party claims against Stearns (collectively, the "**Live Defendant Third-Party Claims**"):

Live Counterclaims:
Count 1: Common Law Fraud
Count 2: Fraud in the Inducement
Count 4: Negligent Misrepresentation
Count 5: Aiding and Abetting Negligent Misrepresentation

---

[42] *See* Docket Nos. 34 and 35.

Count 7: Money Had and Received
Count 8: Unjust Enrichment
Count 10: Invasion of Privacy
Count 11: Promissory Estoppel
Count 13: Breach of Duty of Good Faith and Fair Dealing

Live Defendant Third-Party Claims:
Count 3: Negligent Misrepresentation
Count 6: Aiding and Abetting Negligent Misrepresentation
Count 9: Invasion of Privacy
Count 12: Promissory Estoppel

In relation to the above, each of the Live Counterclaims with the exception of Count 1 is a newly asserted counterclaim by the Allen Defendants against the Taylors (collectively, the "**New Counterclaims**") and each of the Live Defendant Third-Party Claims is a newly asserted third-party claim by the Allen Defendants against Stearns.

Pursuant to the Intervenors' Live Pleading, the Debtor Intervenors now assert the following claims in intervention against the Taylors (collectively, the "**Live Intervention Claims**") and third-party claims against Stearns (collectively, the "**Live Intervenor Third-Party Claims**"):[43]

Live Intervention Claims:
Count 2: Common Law Fraud
Count 3: Fraud in the Inducement
Count 5: Tortious Interference with Existing Contract
Count 6: Tortious Interference with Prospective Relations
Count 8: Negligent Misrepresentation
Count 9: Aiding and Abetting Negligent Misrepresentation
Count 11: Money Had and Received
Count 12: Unjust Enrichment
Count [14]: Invasion of Privacy
Count [15]: Promissory Estoppel
Count [17]: Breach of Duty of Good Faith and Fair Dealing

[43] Beginning with the Invasion of Privacy Count against Stearns in the Intervenors' Live Pleading (*i.e.* the second "Count 12" therein), the counts are misnumbered. Therefore, for ease of reference herein, beginning with the Invasion of Privacy Count against Stearns, the counts have been renumbered in the above listings (with the corrected count numbers bracketed) to reflect an accurate sequential listing of the counts in the same order as presented in the Intervenors' Live Pleading. Thus, all subsequent references herein to a particular count shall refer to the corrected numbering scheme set out above. Additionally, the above listing purposefully omits Count 1 because in the Intervenors' Live Pleading the Debtor Intervenors reflect Count 1 as "Intentionally Left Blank."

Live Intervenor Third-Party Claims:
Count 4: Fraud in the Inducement
Count 7: Negligent Misrepresentation
Count 10: Aiding and Abetting Negligent Misrepresentation
Count [13]: Invasion of Privacy
Count [16]: Promissory Estoppel

In relation to the above, each of the Live Intervention Claims with the exception of Counts 2 and 5 is a newly asserted claim by the Debtor Intervenors against the Taylors (collectively, the "**New Intervention Claims**") and each of the Live Intervenor Third-Party Claims is a newly asserted third-party claim by the Debtor Intervenors against Stearns.

G.     *Alleged Wrongful Conduct of the Taylors and Stearns*

To facilitate analysis of the current requests for dismissal, it is helpful to summarize by category the material factual allegations made by the THEAG Parties within the Live Pleadings (which are substantially identical in content).

### Allegations of the Taylors' Misrepresentations and Omissions With Respect to Financial Information Supplied

The THEAG Parties allege that the Taylors oversaw and managed the financial records of the Business. They assert that after the Earnest Money Deposit had been made, the Taylors began to slow the purchase process down by delaying or failing to provide updated financials with respect to the Business while at the same time pressuring the THEAG Entities and Allen Defendants to move forward in the closing process under the threat of a walk away with the Earnest Money Deposit. They further allege that the updated financials ultimately provided by the Taylors in the fourth quarter of 2015 had been manipulated by the Taylors to inaccurately represent a thriving business, and that when questioned about previously undisclosed information, the Taylors reassured the accurateness of the financial information supplied. The THEAG Parties claim that, after the closing, they discovered that the profit and loss statements that had been provided were not accurate, that pursuant to the purchase price allocation provided by the Taylors for inclusion in the APA, the goodwill of the Stores had been overstated, and that the Taylors had altered the books of the Stores by transferring business from the Dallas Store to the Denton Store to artificially inflate the Denton Store revenues to ensure that the Denton Store would qualify for a royalty rebate from the franchisor that would be payable to the Taylors/Taylor Entities.[44] Thus, the THEAG Parties allege that the Taylors intentionally concealed, obfuscated and failed to disclose material facts relating to the accounting and financial records of the Stores; that the Taylors reassured and falsely explained away the concerns raised; and that the Taylors failed to exercise reasonable care

---

[44] *See, e.g.,* Defendants' Live Pleading, ¶¶ 14-17, 24-27, 29-30 and 35; Intervenors' Live Pleading, ¶¶ 14-17, 22-25, 27-28 and 33.

and competence in obtaining and communicating the Business operational information and finances.[45]

Based in whole or in part upon such allegations, both the Allen Defendants and the Debtor Intervenors have asserted claims against the Taylors for common law fraud, negligent misrepresentation, and unjust enrichment.[46]

### Allegations of the Taylors' Promises and Misrepresentations With Respect to the Provision of Post-Closing Support

Next, the THEAG Parties allege that, in convincing the THEAG Parties to close on the sale, the Taylors falsely promised and misrepresented to the THEAG Parties that following the closing they would assist the Debtor Intervenors in both maintaining current client relationships and accounts and also in generating new business and increasing the revenue to the Stores.[47]

Based in whole or in part upon such allegations, both the Allen Defendants and the Debtor Intervenors have asserted claims against the Taylors for fraud in the inducement, money had and received, unjust enrichment, promissory estoppel, and breach of the duty of good faith and fair dealing.[48]

### Allegations of the Taylors' Post-Closing Tortious Interference With Existing Contracts and Prospective Business Relations

Third, the Debtor Intervenors allege that the Taylors undermined the Debtor Intervenors' current and future client relationships and ongoing business by laying the groundwork to siphon clients from the Debtor Intervenors immediately after expiration of the APA non-compete period. In this regard, the Debtor Intervenors allege that Chris Taylor sabotaged the business post-closing by destabilizing relationships with long-time clients. He allegedly accomplished this by, among other things, slowly obtaining confidential, proprietary information about the status of the business from his prior employees still working at the Stores, such as Lance Tucker ("**Tucker**"), and then using the information to compete with the Debtor Intervenors and to hinder the Debtor Intervenors' operations and client relationships. According to the Debtor Intervenors, one of the Stores' biggest clients was the Dallas Stars (the "**Stars**") with whom the Stores had a contractual relationship to serve as the exclusive supplier of sponsor-based signage. In the Spring of 2018, the Stars allegedly requested a price estimate from the Debtor Intervenors to replace all of the signage of one of the Stars' sponsors who was being replaced. The Debtor Intervenors allegedly provided the estimate in May of 2018 but were later informed by the Stars in the Summer of 2018 that there were some quality problems with the Stores' work and that the Stars had determined to no longer exclusively use the Stores for sponsor-based signage. The Debtor Intervenors further allege that, in October of 2018, they discovered Mr. Taylor's ongoing contact with Tucker and learned from Tucker that Mr. Taylor had obtained a significant sponsor-based signage project from the Stars. Additionally,

---

[45] *See, e.g.,* Defendants' Live Pleading, ¶¶ 46, 48-49 and 61-62; Intervenors' Live Pleading, ¶¶ 44, 46-47 and 75-76.

[46] *See* Defendants' Live Pleading, Counts 1, 4 and 8; Intervenors' Live Pleading, Counts 2, 8 and 12.

[47] *See, e.g.,* Defendants' Live Pleading, ¶¶ 28, 53, 84 and 94; Intervenors' Live Pleading, ¶¶ 26, 51, 98 and 108.

[48] *See* Defendants' Live Pleading, Counts 2, 7, 8, 11 and 13; Intervenors' Live Pleading, Counts 3, 11, 12, 15 and 17.

the Debtor Intervenors allege that the Debtor Intervenors had a reasonable probability of entering into business relationships with new clients, but that the Taylors undermined such prospects by falsely reassuring and promising that they would assist in bringing in new clients post-closing.[49]

Based in whole or in part upon such allegations, the Debtor Intervenors have asserted claims against the Taylors for tortious interference with existing contract, tortious interference with prospective relations, and money had and received.[50]

### *Allegations of Misrepresentations and Omissions With Respect To Financing of the Sale and the Nature of the Stearns Loan*

Next, the THEAG Parties allege that Stearns represented to the THEAG Parties that the sale was being finalized under a typical Small Business Association ("**SBA**") loan structure with normal borrower protections and guidelines in order to encourage the THEAG Parties to close on the sale, but that, instead, Stearns structured the Stearns Loan in an atypical manner. In this regard, the THEAG Parties allege that Stearns' structuring of the Stearns Loan in relation to the goodwill, Stearns' negotiations with the Taylors in relation to the sale and its deal with the Taylors on the Promissory Note (*i.e.* in permitting the Taylors to receive monthly payments under the telecommunications lease at the Denton Store and to receive royalty rebates from the franchisor), and Stearns' failure to fully subordinate the Promissory Note to the Stearns Loan or to otherwise enforce such subordination took the Stearns Loan out of SBA guidelines. According to the THEAG Parties, Stearns allegedly actively disregarded ordinary repayment support delineated by the SBA for SBA loans when post-closing financial troubles impacted the Debtor Intervenors' ability to repay its obligations, Stearns allegedly declined to approve a short-term interest only modification to the Stearns Loan, Stearns allegedly declined to subordinate its lien on accounts receivable to enable the Debtor Intervenors to factor their receivables, and Stearns allegedly failed to adjust the monthly Stearns Loan payments after proceeds from the sale of the Denton Store were applied to the outstanding principal balance of the Stearns Loan. The THEAG Parties allege that the Taylors provided false information relating to the financing for purchase of the Stores and that both Stearns and the Taylors intentionally concealed, obfuscated and failed to disclose material facts relating to the nature of the financing.[51]

Based in whole or in part upon such allegations, the Debtor Intervenors have asserted a claim against Stearns for fraud in the inducement;[52] both the Allen Defendants and the Debtor Intervenors have asserted claims against Stearns for negligent misrepresentation and promissory estoppel;[53] and both the Allen Defendants and the Debtor Intervenors have asserted claims against the Taylors for fraudulent inducement, negligent misrepresentation, and unjust enrichment.[54]

---

[49] *See, e.g.*, Intervenors' Live Pleading, ¶¶ 29-30, 35-38 and 66-68.

[50] *See* Intervenors' Live Pleading, Counts 5, 6 and 11.

[51] *See, e.g.*, Defendants' Live Pleading, ¶¶ 18-21, 41-42, 44, 53 and 61; Intervenors' Live Pleading, ¶¶ 18-21, 39-40, 42, 51, 55-58 and 75.

[52] *See* Intervenors' Live Pleading, Count 4.

[53] *See* Defendants' Live Pleading, Counts 3 and 12; Intervenors' Live Pleading, Counts 7 and 16.

[54] *See* Defendants' Live Pleading, Counts 2, 4 and 8; Intervenors' Live Pleading, Counts 3, 8 and 12.

### *Allegations of Unlawful Disclosure of Confidential Information*

Next, the THEAG Parties allege that Stearns intentionally intruded on their solitude, seclusion and private affairs by disclosing non-public, highly sensitive, confidential financial information to the Taylors both pre-closing and post-closing.  The THEAG Parties further allege that the Taylors intentionally intruded on their solitude, seclusion and private affairs by soliciting such information and by disclosing and discussing such information with clients and other third parties.[55]

Based in whole or in part upon such allegations, both the Allen Defendants and the Debtor Intervenors have asserted a claim against Stearns for invasion of privacy,[56] and both the Allen Defendants and the Debtor Intervenors have asserted claims against the Taylors for invasion of privacy and unjust enrichment.[57]

### *Allegations of Aiding and Abetting Negligent Misrepresentation*

Finally, the THEAG Parties allege that the Taylors and Stearns gave each other assistance and encouragement in their negligent misrepresentations to the THEAG Parties with respect to the financing for purchase of the Stores and the nature of the Stearns Loan and that their assistance and encouragement to each other was a substantial factor in facilitating and causing the negligent misrepresentations to be made to the THEAG Parties.[58]

Based in whole or in part upon such allegations, both the Allen Defendants and the Debtor Intervenors have asserted claims against both the Taylors[59] and Stearns[60] for aiding and abetting negligent misrepresentation.

### *DISCUSSION*

Pursuant to the Taylor Motion, the Taylors request dismissal of each of the Live

Counterclaims on the following grounds:

- In the case of each of the New Counterclaims, for violation of Rule 15 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable to adversary proceedings by Rule 7015 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**");

---

[55] *See, e.g.*, Defendants' Live Pleading, ¶¶ 18, 21, 78-79 and 81-82; Intervenors' Live Pleading, ¶¶ 18, 21, 92-93 and 95-96.

[56] *See* Defendants' Live Pleading, Count 9; Intervenors' Live Pleading, Count 13.

[57] *See* Defendants' Live Pleading, Counts 8 and 10; Intervenors' Live Pleading, Counts 12 and 14.

[58] *See, e.g.*, Defendants' Live Pleading, ¶¶ 64, 66-67, 69 and 71-72; Intervenors' Live Pleading, ¶¶ 41, 78, 80-81, 83 and 85-86.

[59] *See* Defendants' Live Pleading, Count 5; Intervenors' Live Pleading, Count 9.

[60] *See* Defendants' Live Pleading, Count 6; Intervenors' Live Pleading, Count 10.

- In the case of Counts 1, 2, 4, 10 and 11, pursuant to Federal Rule 12(b)(1), made applicable to adversary proceedings by Bankruptcy Rule 7012(b), for lack of standing and, thus, lack of subject matter jurisdiction;

- In the case of Counts 1, 2 and 4, for failure to plead with particularity as required by Federal Rule 9(b), made applicable to adversary proceedings by Bankruptcy Rule 7009; and

- In the case of all Live Counterclaims, pursuant to Federal Rule 12(b)(6), made applicable to adversary proceedings by Bankruptcy Rule 7012(b), for failure to state a claim upon which relief can be granted.

Additionally, the Taylors request dismissal of each of the Live Intervention Claims on the following grounds:

- In the case of each of the New Intervention Claims, for violation of Federal Rule 15;

- In the case of Counts 2, 3 and 8, for failure to plead with particularity as required by Federal Rule 9(b); and

- In the case of all Live Intervention Claims, pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Pursuant to the Stearns Defendant Claim Motion, Stearns requests the dismissal of each of the Live Defendant Third-Party Claims on the following grounds:

- In the case of Counts 3 and 6, for failure to plead with particularity as required by Federal Rule 9(b); and

- In the case of all Live Defendant Third-Party Claims, pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

And pursuant to the Stearns Intervenor Claim Motion, Stearns requests the dismissal of each of the Live Intervenor Third-Party Claims on the following grounds:

- In the case of Counts 4 and 7, for failure to plead with particularity as required by Federal Rule 9(b); and

- In the case of all Live Intervenor Third-Party Claims, pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

With respect to any Live Defendant Third-Party Claims and Live Intervenor Third-Party Claims that are not subject to dismissal on such grounds, Stearns alternatively requests that the Allen Defendants or Debtor Intervenors, as applicable, be required pursuant to Federal Rule 12(e), made

applicable to adversary proceedings by Bankruptcy Rule 7012(b), to replead such claims with detail to enable Stearns to reasonably respond.

## I.
## Dismissal Standards

### A.    Federal Rule 15 – Impermissible Amendment of Pleadings

Pursuant to Federal Rule 15, a party may amend its pleading once as a matter of course within (a) twenty-one days after serving it or (b) if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Federal Rule 12(b), (e) or (f), whichever is earlier.[61]  In all other cases, a party may only amend with the opposing party's written consent or with leave of court.[62]

If an amended pleading is filed in violation of Federal Rule 15, then the court may, among other things, dismiss any cause of action added as part of the unauthorized amended pleading.[63] Alternatively, the court may, in its discretion, treat the unauthorized amendment as an implied request for leave to amend.[64]  In the latter case, while a court "should freely give leave when justice so requires,"[65] the right to amend is not automatic.  Among other things, in determining whether to grant leave, the court may consider such factors as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, and the futility of the amendment.[66]

---

[61] Fed. R. Civ. P. 15(a)(1).

[62] Fed. R. Civ. P. 15(a)(2).

[63] *See, e.g., Milman v. FCA U.S., LLC*, Case No. SACV 18-00686 JVS (SSX), 2019 WL 3334612, at *5 (C.D. Cal. Apr. 15, 2019).

[64] *See Rolls-Royce Corp. v. Heros, Inc*., Civ. Action No. 3:07-CV-0739-D, 2008 WL 11425342, at *2 (N.D. Tex. July 17, 2008); *Jacuzzi, Inc. v. Franklin Elec. Co*., Civ. Action No. 3:07-CV-1090-D, 2008 WL 2185209, at *4 (N.D. Tex. May 27, 2008).

[65] Fed. R. Civ. P. 15(a)(2); *see also Leffall v. Dallas Indep. Sch. Dist*., 28 F.3d 521, 524 (5th Cir. 1994) (explaining that leave should not be denied unless there is a substantial reason to do so).

[66] *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314-15 (5th Cir. 1996), *cert. denied*, 519 U.S. 1057 (1997); *Wimm v. Jack Eckerd Corp*., 3 F.3d 137, 139 (5th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B.      *Federal Rule 12(b)(1) – Lack of Standing***

"No principle is more fundamental to the [federal] judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[67]  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."[68]  Thus, "[s]tanding is an issue of subject matter jurisdiction [that] can be contested by a Rule 12(b)(1) motion to dismiss."[69]

To have constitutional standing, a claimant must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defending party, and (3) that is likely to be redressed by a favorable judicial decision.[70]  As explained by the Supreme Court:

> First, the [claimant] must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly … trace[able] to the challenged action of the [defending party], and not … th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[71]  At the pleading stage, the claimant must allege sufficient facts to demonstrate the existence of each of the above elements of standing.[72]

---

[67] *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)).

[68] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

[69] *Rapid Tox Screen LLC v. Cigna Healthcare of Tex. Inc.*, Civ. Action No. 3:15-CV-3632-B, 2017 WL 3658841, at *3 (N.D. Tex. Aug. 24, 2017) (quoting *Little v. Texas Atty. Gen.*, No. 3:14-CV–3089-D, 2015 WL 5613321, at *2 n.5 (N.D. Tex. Sept. 24, 2015), *aff'd*, 655 Fed. Appx. 1027 (5th Cir. 2016)).

[70] *Deutsch v. Travis Cty. Shoe Hosp., Inc.*, 721 Fed. Appx. 336, 339 (5th Cir. 2018) (quoting *Spokeo, Inc.*, 136 S. Ct. at 1547).

[71] *See also Deutsch*, 721 Fed. Appx. at 339-40 (quoting *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560)); *Seastrunk v. Darwell Integrated Tech., Inc.*, No. Civ. A. 3:05CV0531-G, 2005 WL 1667811 (N.D. Tex. July 15, 2005).

[72] *Deutsch*, 721 Fed. Appx. at 339 (citing *Spokeo, Inc.*, 136 S. Ct. at 1547 (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975))).

### C.     Federal Rule 9(b) – Failure to Plead with Particularity

Pursuant to Federal Rule 9(b), in alleging fraud a party must state with particularity the circumstances constituting fraud.[73]  While "[t]he particularity demanded by Rule 9(b) necessarily differs with the facts of each case,"[74] "Rule 9(b) requires 'the who, what, when, where, and how' [of the alleged fraud] to be laid out."[75]  Stated another way, Federal Rule 9(b) requires the party asserting fraud to allege "the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'"[76]

Given the seriousness of a claim of fraud, the requirement of particularity is to, among other things, protect the reputation of a defending party against unsubstantiated assertions of fraudulent conduct and to otherwise provide adequate notice to the defending party of the specific alleged misconduct at issue.[77]  Additionally, Federal Rule 9(b) is not limited in scope to allegations solely in support of a claim of fraud.  Instead, "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."[78]

A claim that is predicated on allegations of fraud that are not stated with particularity as required by Federal Rule 9(b) fails to state a claim upon which relief can be provided.  Thus, "[a]

---

[73] Fed. R. Civ. P. 9(b).

[74] *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1067-68 (5th Cir. 1994) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)).

[75] *Kreway v. Countrywide Bank, FSB*, 647 Fed. Appx. 437, 437-38 (5th Cir. 2016) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp*., 343 F.3d 719, 724 (5th Cir.), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003)); *see also Reagor Auto Mall, Ltd. v. Firstcapital Bank of Texas, N.A. (In re Reagor-Dykes Motors, LP*), Adv. No. 20-05002, 2020 WL 4939180, at *10 (Bankr. N.D. Tex. Aug. 24, 2020) (citing *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir.), *cert. denied*, 558 U.S. 873 (2009)).

[76] *Tuchman*, 14 F.3d at 1068 (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc*., 975 F.2d 1134, 1139 (5th Cir. 1992)); *see also Williams v. WMX Techs., Inc*., 112 F.3d 175, 177-78 (5th Cir.), *cert. denied*, 522 U.S. 966 (1997).

[77] *See Ryan v. Brookdale Int'l Sys. Inc*., Civ. Action No. H-06-01819, 2008 WL 2405970, at *2 (S.D. Tex. June 11, 2008).

[78] *Lonestar Ladies Inv. Club v. Schlotzky's Inc*., 238 F.3d 363, 368 (5th Cir. 2001).

dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)."[79]

### D. Federal Rule 12(b)(6) – Failure to State a Claim for Relief

Federal Rule 8, made applicable to adversary proceedings by Bankruptcy Rule 7008, simply requires a pleading asserting a claim for relief to include "a short and plain statement of the claim showing that the pleader is entitled to relief," with each allegation in support thereof to be "simple, concise and direct."[80] That said, pursuant to Federal Rule 12(b)(6), on motion of a defending party filed prior to the filing of such party's answer, the claim is subject to dismissal if the pleading in which the claim is asserted fails to state a claim upon which relief can be granted.[81]

"To survive a motion to dismiss, a [pleading in which the claim for relief is asserted] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[82] "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [defending party] is liable for the misconduct alleged."[83] In assessing facial plausibility, a court is to accept as true all well-pleaded factual allegations set forth within the pleading for relief, even if doubtful in fact.[84] But the allegations must consist of more than mere labels and conclusions.[85] "Threadbare recitals of the elements of

---

[79] *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

[80] Fed. R. Civ. P. 8(a)(2), (d)(1).

[81] *See* Fed. R. Civ. P. 12(b)(6).

[82] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Baron v. Sherman (In re Ondova Ltd. Co.)*, 914 F.3d 990, 992-93 (5th Cir. 2019).

[83] *Iqbal*, 556 U.S. at 678.

[84] *Twombly*, 550 U.S. at 555; *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 177 (5th Cir. 2018).

[85] *Twombly*, 550 U.S. at 555.

a cause of action, supported by mere conclusory statements, do not suffice."[86]   Additionally, the well-pleaded complaint rule is inapplicable to legal conclusions.[87]   Courts "are not bound to accept as true 'a legal conclusion couched as a factual allegation.'"[88]

Subject to application of the foregoing principles, the determination of facial plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[89]   While "[t]he plausibility standard is not akin to a 'probability requirement,' [ ] it asks for more than a sheer possibility that a [defending party] has acted unlawfully."[90]   Thus, to avoid dismissal, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"[91]

## E.  Federal Rule 12(e) – Alternative Request for More Definite Statement

Inasmuch as "a motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted[,]'"[92] Stearns alternatively requests with respect to any Live Defendant Third-Party Claim and Live Intervenor Third-Party Claim that is not subject to dismissal that the Allen Defendants or Debtor Intervenors, as applicable, be required to replead such claim with detail to enable Stearns to reasonably respond.

Federal Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the

---

[86] *Iqbal*, 556 U.S. at 678; *see also Allen*, 907 F.3d at 177 (explaining that "'naked assertion[s]' devoid of 'further factual enhancement'" are not sufficient to prevent dismissal) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).

[87] *Iqbal*, 556 U.S. at 678.

[88] *Ondova Ltd. Co.*, 914 F.3d at 993 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[89] *Iqbal*, 556 U.S. at 679.

[90] *Id.* at 678.

[91] *Twombly*, 550 U.S. at 555.

[92] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)).

party cannot reasonably prepare a response."[93]  If granted, the failure of the claimant to provide a more definite statement as ordered may result in the court striking the pleading.[94]

## II.
## <u>Impermissible Pleading in Violation of Federal Rule 15</u>

The Taylors initially request the dismissal of each of the New Counterclaims and New Intervention Claims for violation of Federal Rule 15, arguing that each of the new claims was included within a pleading filed after expiration of each of the permissive twenty-one day periods to replead set forth within Federal Rule 15 and without obtaining either the consent of the Taylors or leave of court.  The THEAG Parties dispute any violation of Federal Rule 15.

First, the THEAG Parties claim that as part of the Court's oral ruling and entry of the Dismissal Orders in relation to the Defendants' First Amended Pleading and the Intervenors' Original Petition, the Court not only granted the THEAG Parties leave to amend those of the Original Counterclaims and Original Intervention Claims that were conditionally dismissed subject to the right to replead, but also granted leave to reframe such claims as different causes of action and to otherwise add any additional causes of action arising out of the same nucleus of operative facts as alleged in the original pleadings.  The THEAG Parties are wrong.  At the time of the hearing on the first round of dismissal motions, the Court's focus was solely and exclusively on the causes of action that had actually been pled within the Defendant's First Amended Pleading and the Intervenors' Original Petition.  There were no pending requests to amend to add additional claims, and no oral request to such effect was made at the dismissal hearing.  Thus, the Court's ruling clearly and exclusively provided for the dismissal with prejudice of the Debtor Intervenors' breach of contract claim against the Taylors and for the conditional dismissal of all other Original

---

[93] Fed. R. Civ. P. 12(e).

[94] *Id.*

Intervention Claims and all Original Counterclaims subject to the right of the Debtor Intervenors and the Allen Defendants, respectively, to replead those, *and only those*, claims.

Second, while not timely raised within the Debtor Intervenors' response to the Taylor Motion, counsel for the Debtor Intervenors added in oral argument that the Debtor Intervenors' filing of the Intervenors' Live Pleading was, in fact, timely under both Federal Rule 15 and controlling caselaw.  Focusing first on the Debtor Intervenors' argument under Federal Rule 15, the Intervenors' Original Petition was filed in State Court on March 12, 2019 (and then again in the adversary proceeding on April 26, 2019 at the Court's request for ease of reference in docketing following removal of the State Court case to this Court), and the Taylors' original dismissal motion in relation thereto was filed on June 5, 2019.  Thereafter, on August 16, 2019, more than twenty-one days after both the filing of the Intervenors' Original Petition and the filing of the Taylors' original dismissal motion, the Debtor Intervenors filed the Intervenors' Live Pleading.  Therefore, under the plain language of Federal Rule 15, the addition of the entirely new claims in the Intervenors' Live Pleading without either the consent of the Taylors or leave of court was impermissible.

Turning next to the Debtor Intervenors' alternative argument that the filing was nevertheless timely under controlling caselaw, when requested to provide a supporting citation to such caselaw, counsel for the Debtor Intervenors was unable to provide a single citation.  The Court has also not located a single published opinion that stands for the proposition that an exception exists to the requirements of Federal Rule 15.  Consequently, both of the Debtor Intervenors' orally-presented additional arguments are hereby rejected.

This, then, leads the Court to the question of whether to dismiss each of the New Counterclaims and New Intervention Claims for violation of Federal Rule 15, or to treat the inclusion of each new cause of action in the Live Pleadings as an implied request for leave to

amend (as such, an "**Implied Request for Leave to Amend**"). Ultimately, while the Court is troubled by what the Taylors have understandably characterized as the "scatter-shot approach" taken by the THEAG Parties in asserting all of the new causes of action in the Live Pleadings, given Federal Rule 15's dictate that a "court should freely give leave [to amend] when justice so requires,"[95] and the fact that the Taylors have specifically addressed each of the New Counterclaims and New Intervention Claims on substantive dismissal grounds in their current request for dismissal, the Court finds that dismissal of the newly-asserted causes of action on the basis of violation of Federal Rule 15 alone is not warranted and that the inclusion of each new cause of action in the Live Pleadings should, instead, be treated as an Implied Request for Leave to Amend. The same approach will also be taken in relation to the Live Defendant Third-Party Claims and Live Intervenor Third-Party Claims asserted against Stearns – inasmuch as all of them have also been added in violation of Federal Rule 15.

Anticipating the possibility of the Court treating each newly-asserted cause of action as an Implied Request for Leave to Amend, the Taylors also argue that leave should be denied on account of the THEAG Parties' alleged lack of diligence in asserting the new claims, highlighting the fact that the case was initiated in State Court back in the Fall of 2018, that the THEAG Parties have allegedly been aware of the information, facts and bases for the new claims since at least the Spring of 2019, and that they did not assert the new claims until roughly six months later, in the Fall of 2019. While under certain circumstances a six month delay in asserting claims might be construed as dilatory, under the particular facts and circumstances of this case the Court does not find the length of delay to constitute sufficient cause to deny the request for leave on that basis alone. Instead, the Court's focus in considering whether to deny any particular Implied Request

---

[95] *See* Fed. R. Civ. P. 15(a)(2).

for Leave to Amend and to dismiss a particular newly-asserted claim will be on whether the granting of leave would be futile because the claim is subject to dismissal on one or more of the other bases for dismissal identified by the Taylors or Stearns, as applicable.[96]

### III.
### Evaluation of Individual Claims

### A.     Common Law Fraud

The elements of common law fraud under Texas law are: (1) that a material representation was made by the defending party; (2) the representation was false; (3) when the representation was made, the defending party knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the defending party made the representation with the intent that the claimant should act upon it; (5) the claimant acted in reliance on the representation; and (6) the claimant thereby suffered injury.[97]

Pursuant to the Live Pleadings, the Allen Defendants and the Debtor Intervenors have re-pled their common law fraud claims against the Taylors. As re-pled, the claims focus on the alleged fraudulent misrepresentations and omissions of the Taylors with respect to financial information supplied in connection with the sale.

### 1.     Federal Rule 12(b)(1) Request for Dismissal

The Taylors' first argument for dismissal is focused solely on the Defendants' Live Pleading. The Taylors assert that the Allen Defendants lack standing to pursue their common law fraud claim against the Taylors because "the underpinning of [the Allen Defendants'] claim is in reality an alleged harm to the THEAG Entities. In other words, while the [Allen Defendants] may

---

[96] *See, e.g., Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (endorsing the same standard as applicable to dismissal pursuant to Federal Rule 12(b)(6) in assessing the futility of an amendment); *see also Smallwood v. Bank of Am.*, Civ. Action No. 3:11-CV-1283-D, 2011 WL 4941044, at *1 (N.D. Tex. Oct. 17, 2011).

[97] *Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 391 (5th Cir. 2018) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)); *see also JPMorgan Chase Bank, N.A. v. Orca Assets GP, LLC*, 546 S.W.3d 648, 653 (Tex. 2018).

assert an alleged fraud <u>defense</u> to the [Taylors'] enforcement of the guaranty, they cannot assert a fraud <u>claim</u> on the alleged conduct because they did not incur the alleged injury."[98] The Allen Defendants respond that they have alleged, as parties to their own contractual relationship with the Taylors under the Guaranty, that they suffered individualized harm at the hands of the Taylors and never would have agreed to guarantee the indebtedness, liabilities and obligations of the THEAG Entities had the Allen Defendants not been misled and defrauded by the Taylors.

The Court agrees with the Allen Defendants. While there is clearly a degree of overlap in the allegations of the THEAG Parties with respect to the complained of misrepresentations supporting the common law fraud claims, the Allen Defendants have alleged sufficient actual, concrete and particularized harm to themselves as a result of the obligations incurred under the Guaranty to establish constitutional standing with respect to their common law fraud claim against the Taylors. Therefore, the Court will deny the Taylors' request to dismiss Count 1 of the Defendants' Live Pleading pursuant to Federal Rule 12(b)(1).

### 2. *Federal Rule 9(b) Request for Dismissal*

Next, with respect to both Live Pleadings, the Taylors assert that the THEAG Parties have failed to plead their common law fraud claims with particularity as required by Federal Rule 9(b). In this regard, the Taylors highlight the generalized allegations included within the Live Pleadings with respect to "concealment," "obfuscation" and "failure to disclose," asserting that the THEAG Parties have failed to identify what information was concealed or not disclosed, what information was inaccurate and untruthful, what was falsely explained away, and what was misrepresented. In response, the THEAG Parties assert that sufficient detail has been included in the Live Pleadings,

---

[98] Plaintiffs' Brief, at p.10 (emphasis in orig.).

including allegations with respect to the fraudulent inflation of the revenues of the Stores and the misrepresented goodwill of the Stores.

While the Court agrees with the Taylors' overall assessment that the Live Pleadings are rife with generalized statements of fraudulent conduct, the Court nevertheless finds that the THEAG Parties have provided sufficient particularity in alleging the following: (a) that the Taylors supplied inaccurate profit and loss statements with respect to the Stores;[99] (b) that the Taylors altered the books of the Denton Store by transferring business from the Dallas Store to the Denton Store to artificially inflate its revenues;[100] (c) that the Taylors transferred revenue between the Stores to reflect higher rebate payment obligations for the years prior to the closing;[101] and (d) that the Taylors mispresented the values of the Arlington Store, Dallas Store and Denton Store in the APA price allocation by overstating the goodwill associated with each of the Stores.[102] Thus, based upon these particularized allegations in the Live Pleadings, the Court will deny the Taylors' request to dismiss Count 1 of the Defendants' Live Pleading and Count 2 of the Intervenors' Live Pleading pursuant to Federal Rule 9(b).

### 3.      Federal Rule 12(b)(6) Request for Dismissal

Finally, the Taylors assert that the common law fraud claims of the THEAG Parties must be dismissed because the THEAG Parties cannot establish the element of justifiable reliance given the multiple red flags allegedly encountered by the THEAG Parties in the due diligence process, such as the Taylors' failure to timely produce documents, the delivery of financials showing a significant drop in revenue, threats of a walk away, and the delay in providing access to employees.

---

[99] *See, e.g.*, Defendants' Live Pleading, ¶ 29; Intervenors' Live Pleading, ¶ 27.

[100] *See, e.g.,* Defendants' Live Pleading, ¶ 29; Intervenors' Live Pleading, ¶ 27.

[101] *See, e.g.,* Defendants' Live Pleading, ¶ 30; Intervenors' Live Pleading, ¶ 28.

[102] *See, e.g.*, Defendants' Live Pleading, ¶¶ 14-17, 35; Intervenors' Live Pleading, ¶¶ 14-17, 33.

In response, the THEAG Parties assert that the Taylors have erroneously skipped past the pleading stage, where the relevant inquiry is whether the THEAG Parties have facially alleged plausible justifiable reliance, and headed straight to the trial stage, where the justifiability of the alleged reliance is to be tested based upon the evidence presented.

The Court agrees with the THEAG Parties. Among other things, the Live Pleadings include the allegation that when the THEAG Parties questioned the Taylors with respect to inconsistencies noticed in the financial information supplied, the Taylors falsely explained away the concerns and reassured the THEAG Parties that the financial information was accurate.[103] Coupled with allegations concerning the pressure put on the THEAG Parties to close in order to avoid the potential loss of the Earnest Money Deposit,[104] the THEAG Parties have each alleged sufficient facts with respect to justifiable reliance to present a plausible claim of common law fraud. Therefore, the Court will also deny the Taylors' request to dismiss Count 1 of the Defendants' Live Pleading and Count 2 of the Intervenors' Live Pleading pursuant to Federal Rule 12(b)(6).

**B.      *Fraud in the Inducement***

The elements of fraud in the inducement under Texas law are the same as common law fraud plus the added element that the fraud relates to an agreement between the parties.[105] As explained by the Texas Supreme Court, "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations."[106]

---

[103] *See, e.g.*, Defendants' Live Pleading, ¶¶ 48-49; Intervenors' Live Pleading, ¶¶ 46-47.

[104] *See, e.g.*, Defendants' Live Pleading, ¶¶ 24-25, 27; Intervenors' Live Pleading, ¶¶ 22-23, 25.

[105] *Johnson v. World Alliance Fin. Corp.*, 830 F.3d 192, 198 (5th Cir. 2016) (citing *In re VNA, Inc.*, 403 S.W.3d 483, 487 (Tex. App. – El Paso 2013, no pet.); *see also Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018).

[106] *Anderson*, 550 S.W.3d at 614 (citing *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)).

Pursuant to the Live Pleadings, both the Allen Defendants and the Debtor Intervenors have asserted a new fraud in the inducement claim against the Taylors. Pursuant to the Intervenors' Live Pleading, the Debtor Intervenors have also asserted a new fraud in the inducement claim against Stearns. In the case of the claims against the Taylors, the claims are focused on both (a) the alleged fraudulent misrepresentations of the Taylors with respect to the provision of post-closing business support to the Debtor Intervenors, and (b) the alleged fraudulent misrepresentations and omissions of the Taylors with respect to the financing of the sale. In the case of the claims against Stearns, the claims are focused on the alleged fraudulent misrepresentations and omissions of Stearns with respect to the nature of the Stearns Loan.

### *The Taylors' Arguments*

#### *1.    Federal Rule 12(b)(1) Request for Dismissal*

The Taylors' first argument for dismissal is again focused solely on the Defendants' Live Pleading. The Taylors assert that the Allen Defendants lack standing to pursue their fraud in the inducement claim for the exact same reasons as set forth in relation to the Allen Defendants' common law fraud claim. Unsurprisingly, the Allen Defendants' response is identical to the response made in relation to the common law fraud claim. Correspondingly, the Court's conclusion with respect to the Allen Defendants' standing is also identical. The Allen Defendants have alleged sufficient actual, concrete and particularized harm to themselves as a result of the obligations incurred under the Guaranty to establish constitutional standing with respect to their fraud in the inducement claim against the Taylors. As a result, the Court will deny the Taylors' request to dismiss Count 2 of the Defendants' Live Pleading pursuant to Federal Rule 12(b)(1).

#### *2.    Federal Rule 9(b) Request for Dismissal*

Next, with respect to both Live Pleadings, the Taylors assert that the THEAG Parties have failed to plead their fraud in the inducement claims with particularity as required by Federal Rule

9(b).  In particular, focused solely on the alleged misrepresentations and omissions involving the financing of the sale, the Taylors point to the THEAG Parties' generalized allegation that the Taylors "concealed, obfuscated, and failed to disclose material facts relating to the financing for the purchase of the Stores."[107]  The Taylors assert that such a conclusory allegation fails to meet the specificity requirement of Federal Rule 9(b).  In response, the THEAG Parties generically assert that sufficient detail has been included in the Live Pleadings without specifically addressing where in the Live Pleadings any particularity with respect to the alleged "concealment," "obfuscation" and "failure to disclose" as to the financing is provided.  Likewise, the Court has not located any allegations of sufficient particularity involving the Taylors' alleged fraudulent misrepresentations and omissions with respect to the financing of the sale.  Therefore, to the extent Count 2 of the Defendants' Live Pleading and Count 3 of the Intervenors' Live Pleading are predicated on the Taylors' alleged misrepresentations and omissions with respect to the financing of the sale, the Implied Requests for Leave to Amend will be denied and the claims will be dismissed for failure to plead with particularity under Federal Rule 9(b).

Importantly, the THEAG Parties' fraud in the inducement claims against the Taylors are also, however, predicated on the alleged misrepresentation of post-closing support to be provided by the Taylors to the Debtor Intervenors.[108]  In the case of the Allen Defendants, the Defendants' Live Pleading alleges that, but for the assurance of such post-closing support, the Allen Defendants would not have guaranteed the obligations of the Debtor Intervenors.  In the case of the Debtor Intervenors, the Intervenors' Live Pleading alleges that the Debtor Intervenors relied upon the Taylors' representations of support in closing under the APA and thereafter suffered damage to

---

[107] Plaintiffs' Brief, at p.10 (quoting Defendants' Live Pleading, ¶ 53; Intervenors' Live Pleading, ¶ 51).

[108] *See, e.g.*, Defendants' Live Pleading, ¶¶ 28, 53-54; Intervenors' Live Pleading, ¶¶ 26, 51-52.

their operations and revenue generation as a result of the Taylors' false assurances of post-closing support. Such allegations are sufficiently particularized to satisfy the requirements of Federal Rule 9(b). Therefore, to the extent Count 2 of the Defendants' Live Pleading and Count 3 of the Intervenors' Live Pleading are predicated on alleged misrepresentations of post-closing business support to be provided by the Taylors, the Taylors' request to dismiss such Counts pursuant to Federal Rule 9(b) will be denied.

### 3. *Federal Rule 12(b)(6) Request for Dismissal*

Finally, the Taylors assert that the fraud in the inducement claims of the THEAG Parties must also be dismissed because the THEAG Parties cannot establish the element of justifiable reliance given the multiple red flags allegedly encountered by the THEAG Parties in the due diligence process of the sale, such as the Taylors' refusal to introduce the THEAG Parties to the Taylor Entities' clients and the delay in providing access to employees. Here, again, the THEAG Parties assert that the Taylors have erroneously skipped past the pleading stage, where the relevant inquiry is whether the THEAG Parties have facially alleged plausible justifiable reliance, and headed straight to the trial stage, where the justifiability of the alleged reliance is to be tested based upon the evidence presented.

The Court agrees with the THEAG Parties. Among other things, the Defendants' Live Pleading includes the assertion that the Allen Defendants entered into the Guaranty based upon the Taylors' pledge of support and that, had they known that such support was falsely pledged, they would never have guaranteed the obligations of the Debtor Intervenors.[109] Similarly, the Intervenors' Live Pleading includes the assertion that the Debtor Intervenors were induced to close

---

[109] *See* Defendants' Live Pleading, ¶¶ 53-54.

the sale based upon the Taylors' pledge of support.[110]  These allegations with respect to reliance are sufficient to present a plausible claim of fraud in the inducement.  Therefore, to the extent Count 2 of the Defendants' Live Pleading and Count 3 of the Intervenors' Live Pleading are predicated on the Taylors' alleged misrepresentations of post-closing support to be provided to the Debtor Intervenors, the Court will grant the Implied Requests for Leave to Amend and deny the Taylors' request to dismiss the claims pursuant to Federal Rule 12(b)(6).

### *Stearns' Arguments*

Stearns requests dismissal of the Debtor Intervenors' fraud in the inducement claim under both Federal Rule 9(b) and Federal Rule 12(b)(6).  Before turning to application of the rules, it is necessary to establish the proper perspective from which to undertake the analysis.  In this regard, Stearns asserts that the Debtor Intervenors' fraud in the inducement claim is "an odd mix of concealment claims relating to information about SBA loan requirements and whether or not the [Stearns Loan] met them."[111]  Thus, framed as a "nondisclosure fraud" claim, Stearns argues that the Debtor Intervenors must also allege as an element of their fraud in the inducement claim that Stearns had a duty of disclosure.  Then Stearns adds that to establish a duty of disclosure a claimant must allege the existence of one of the following circumstances: (1) a special or fiduciary relationship between the claimant and defending party; (2) after having made a prior representation to the claimant, the defending party's discovery of new facts rendering the prior representation untrue; (3) the defending party's creation of a false impression by the claimant by making a partial or incomplete disclosure to the claimant; or (4) the defending party's voluntary disclosure of some

---

[110] *See* Intervenors' Live Pleading, ¶¶ 51-52.

[111] Stearns' Intervenor Claim Motion, at p.10.

information about a matter to the claimant triggering a duty to make a complete disclosure with respect to the matter.[112]

The Debtor Intervenors assert that the existence or nonexistence of a duty of disclosure is unnecessary to consider for two reasons.  First, the Debtor Intervenors assert that fraud in the inducement and fraud by nondisclosure are two different causes of action.  Thus, because the Debtor Intervenors have asserted a claim for fraud in the inducement instead of fraud by nondisclosure, they claim it is unnecessary to allege the existence of a duty to disclose.  Alternatively, the Debtor Intervenors argue that the question of whether a duty to disclose exists is a question of law for the Court alone to determine, and that such determination should not be made until the summary judgment stage instead of at the initial pleading stage.  The Debtor Intervenors are incorrect in both respects.

First, the Debtor Intervenors are erroneous in their belief that the existence of a duty to disclose is never required in the case of a fraud in the inducement claim.  Ultimately, it is the nature of the fraudulent conduct alleged, not the type of fraud claim alleged, that dictates whether the existence of a duty to disclose must be alleged as an element of the fraud claim.  Stated another way, both fraud in the inducement and fraud by nondisclosure are, at their core, simply different forms of common law fraud: if the fraud resulted in the claimant being induced to enter into an agreement, then the fraud may be described as fraud in the inducement; if the fraud resulted from the defending party's failure to disclose, then the fraud may be described as fraud by nondisclosure.  Importantly, these two forms of fraud are not mutually exclusive.  Here, Stearns' argument is that the fraud alleged by the Debtor Intervenors falls into both categories – namely, fraud in the

---

[112] *See* Stearns' Intervenor Claim Motion, at p.10 (citing *Solutioneers Consulting, Ltd. v .Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App. – Houston [14th Dist.] 2007, no pet.); *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 477 n.20 (Tex. App. – Ft. Worth 2004, no pet.)).

inducement by fraudulent nondisclosure. Indeed, it is true that the claim against Stearns is, at least in part, predicated upon fraudulent nondisclosure. Thus, to such extent, the Debtor Intervenors' fraud in the inducement claim is dependent upon the allegation of factual circumstances under which Stearns would have a duty to disclose.

Second, with respect to the Debtor Intervenors' alternative argument that the determination of whether a duty to disclose exists cannot or should not be made at the initial pleading stage, the Debtor Intervenors improperly conflate pleading principles with legal determination concepts. Where the type of fraudulent conduct at issue is fraudulent nondisclosure, while the *determination* of the existence or non-existence of a duty to disclose[113] may indeed turn on the resolution of certain contested facts (*e.g.*, whether a fiduciary or confidential relationship existed between the parties thereby giving rise to a duty to disclose), the claimant must *allege* sufficient facts at the initial pleading stage that, if accepted as true, would lead to the plausible conclusion that the defending party did, in fact, have such a duty to disclose. The failure to do so will present cause for dismissal of the claim under Federal Rule 12(b)(6).

That said, while the Court concurs with Stearns' assessment that the Debtors Intervenors' fraud in the inducement claim is predicated, at least in part, on Stearns' alleged nondisclosure of facts relating to SBA loan characteristics and the nature of the Stearns Loan, the claim is also predicated on alleged affirmative misrepresentations made by Stearns with respect to the nature of the Stearns Loan. For example, the Debtor Intervenors allege in the Intervenors' Live Pleading that Stearns misrepresented to the Debtor Intervenors that the Stearns Loan was a typical SBA loan with normal borrower protections and guidelines.[114] Thus, to the extent the fraud in the

---

[113] The Court agrees with the parties' assessment that the existence or non-existence of a duty to disclose is ultimately an issue of law for the Court to determine. *See In re International Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009).

[114] *See, e.g.*, Intervenors' Live Pleading, ¶¶ 18-19 and 55.

inducement claim is predicated on such alleged affirmative misrepresentations, Stearns' argument with respect to the necessity of an independent duty of disclosure is inapplicable.

### 1.    *Federal Rule 9(b) Request for Dismissal*

With that framework in place, Stearns' first argument for dismissal is the failure to plead with particularity pursuant to Federal Rule 9(b).  In this regard, Stearns points to the fact that there are nothing more than generic and vague references included within the Intervenors' Live Pleading with respect to Stearns' alleged failure to disclose facts related to the financing and the alleged failure of the Stearns Loan to conform to the requirements of an SBA loan.  Stearns asserts that "[n]owhere do Intervenors explain how Stearns created [the] misapprehension [with respect to the nature of the Stearns Loan], if at all, nor do they state what specific 'facts' Stearns was to have disclosed that it did not disclose."[115]  In response, the Debtor Intervenors do little in the way of pointing the Court to any allegations of particularity within the Intervenors' Live Pleading.[116]  In fact, they seemingly only exacerbate matters with the additional vague and nondescript explanation that "[a]t the heart of the claims against Stearns are the lender's representations about the types of loan being made to the Debtors – SBA loans, which come with SBA guidelines and benefits should a small business debtor struggle under the terms of repaying SBA loans."[117]

Put simply, while the Debtor Intervenors allege in the Intervenors' Live Pleading that Stearns represented to the Debtor Intervenors that the Stearns Loan was an SBA loan; that Stearns used the protections and advantages that an SBA loan affords to a small business owner to attract

---

[115] *See* Stearns Intervenor Claim Motion, at pp.12-13.

[116] The allegations within the Intervenors' Live Pleading pinpointed by the Debtor Intervenors merely set out the generalized allegation that Stearns represented to the Debtor Intervenors that the sale was being finalized under a typical SBA loan structure with normal borrower protections and guidelines – failing to specify any particular representations by Stearns with respect to any particular purported SBA protection and/or guideline that the Debtor Intervenors relied upon in entering into the APA.

[117] *See* Intervenors' Stearns Motion Response, at p.8.

the Debtor Intervenors to do business with Stearns; that the Stearns Loan was structured in an atypical way eliminating various anticipated protections and advantages afforded by an SBA loan; that Stearns deliberately failed to inform the Debtor Intervenors of the true facts of the Stearns Loan status, intending for the Debtor Intervenors to rely on its representations and close the sale; and that the Debtor Intervenors, in fact, relied on the representations and omissions in financing and closing the sale;[118] nowhere within the Intervenors' Live Pleading is there any allegation of particularity with respect to (a) what specific representations were made, by whom, and when with respect to the SBA loan characteristics (*i.e.* the protections and/or advantages) that the Stearns Loan would allegedly have; (b) why or how each of those specific representations was untrue; (c) in exactly what ways the Stearns Loan allegedly did not qualify as an SBA loan; (d) what specific information with respect to the Stearns Loan was improperly concealed/withheld and not disclosed and the basis for Stearns' alleged duty to disclose such information; and (e) in what way the Debtor Intervenors reasonably relied upon each such representation and omission. Because of the lack of particularity in the allegations with respect to these matters, Count 4 of the Intervenors' Live Pleading fails to comply with the requirements of Federal Rule 9(b) and is subject to dismissal on such basis.

### 2. *Federal Rule 12(b)(6) Request for Dismissal*

Turning to Stearns' Federal Rule 12(b)(6) request for dismissal, in addition to asserting the same lack of specificity as highlighted above (which also serves as a basis for dismissal under Federal Rule 12(b)(6)), Stearns makes three additional arguments. First, Stearns emphasizes that it is well-settled law that neither a borrower nor a guarantor of an SBA-guaranteed loan has a private right of action against the lender for the lender's violation of any SBA guidelines. Thus,

---

[118] *See* Intervenors' Live Pleading, ¶¶ 18-19, 20, 42 and 55-59.

concluding that the Debtor Intervenors' fraud in the inducement claim effectively boils down to nothing more than a complaint about Stearns' alleged non-compliance with SBA guidelines, Stearns asserts that the claim is subject to dismissal for failure to state a legally cognizable claim. Second, reiterating the necessity of allegations in support of a duty to disclose in relation to nondisclosure fraud, Stearns argues for dismissal on the basis of the Debtor Intervenors' failure to identify a duty to disclose on the part of Stearns in the Intervenors' Live Pleading. Finally, Stearns points out that the parties' rights and obligations with respect to the Stearns Loan are included within the loan agreements executed by the parties and that, absent an independent non-contractual duty of disclosure, "reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law."[119]

In response to Stearns' first argument, the Debtor Intervenors take issue with Stearns' characterization of the claim being pursued by the Debtor Intervenors. The Debtor Intervenors assert that they are not seeking to pursue any recovery under the SBA, but rather to pursue recovery for Stearns' "misrepresentations that the loan was SBA compliant, when, in fact, it was not."[120] In other words, that no private cause of action in favor of a borrower or guarantor has been found to exist under the SBA[121] does not thereby grant license to a lender to affirmatively make false

---

[119] Stearns Intervenor Claim Motion, at p.11 (quoting *DRC Parts & Accessories, LLC v. V.M. Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App. – Houston [14th Dist.] 2003, pet. denied)).

[120] Intervenors' Stearns Motion Response, at pp.9-10.

[121] Indeed, as explained by the Fifth Circuit:

> The declared purpose of the Small Business Act is to preserve and expand full and free competition for the economic well-being and security of the Nation, by encouraging and developing the actual and potential capacity of small business, through aiding, counseling, encouraging, assisting and protecting the interests of small businesses. We think the purpose was public in character, viz., the preservation and expansion of full and free competition to insure the Nation's economic well-being and security, and that there was no intent to crate civil rights of action in private parties.

*Royal Servs., Inc. v. Maintenance, Inc.*, 361 F.2d 86, 92 (5th Cir. 1966).

representations to a prospective borrower or guarantor that the loan sought to be obtained will carry with it certain protections and advantages on account of its status as an SBA loan.[122]

Thus, here, in alleging that Stearns took certain actions that are inconsistent with the guidelines and protections afforded to SBA loans, the Debtor Intervenors are not thereby pursuing relief against Stearns for violation of the SBA, but rather for Stearns' alleged misrepresentation of the Stearns Loan as a typical SBA loan, using the allegations with respect to Stearns' noncompliance with SBA loan guidelines and protections to bolster their assertion that the representations made by Stearns were false. Therefore, to the extent Stearns' request for dismissal of Count 4 of the Intervenors' Live Pleading is predicated on the notion that the Count constitutes an improper assertion of a claim under the SBA, the request will be denied.

Next, in response to Stearns' argument that the Intervenors' Live Pleading fails to include any allegation with respect to the existence of a duty to disclose on the part of Stearns, the Debtor Intervenors assert that it was Stearns' misrepresentation of the Stearns Loan as a typical SBA loan that triggered a duty on the part of Stearns to disclose the truth about the nature of the Stearns Loan. In this regard, the Texas Supreme Court has recognized that, under Texas law, a duty to disclose may arise "when the [defending party]: (1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth."[123] Pursuant to the Intervenors' Live Pleading, the Debtor Intervenors have alleged, among other things, that Stearns represented to them that the Stearns Loan was an SBA loan; that Stearns

---

[122] *Cf. Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.*, 808 F.Supp. 213 (S.D.N.Y. 1992) (action by borrowers against lender parties for misrepresentations with respect to nature of loans offered), *aff'd*, 99 F.3d 401 (2nd Cir. 1995); *see also S.E.C. v. Evolution Capital Advisors, LLC*, 866 F.Supp.2d 661 (S.D. Tex. 2011) (securities fraud case pursued by SEC against promotors of secured note offerings due to misrepresentations with respect to the nature of the SBA protections backing the financial instruments to be acquired).

[123] *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019).

used the protections and advantages that an SBA loan affords to a small business owner to attract the Debtor Intervenors to do business with Stearns; and that Stearns deliberately failed to inform the Debtor Intervenors of the true facts of the Stearns Loan status, intending for the Debtor Intervenors to rely on its representations and close the sale.[124] While such allegations are woefully bereft of the particularity required by Federal Rule 9(b), as previously discussed, they do suggest at least the *possibility* of the existence of a duty to disclose under one or more of the circumstances outlined by the Texas Supreme Court in *Bombardier Aerospace Corp*. For Federal Rule 12(b)(6) purposes, however, "[t]he plausibility standard … asks for more than a sheer *possibility* that a [defending party] has acted unlawfully."[125] Thus, for the same reasons as indicated in relation to Federal Rule 9(b), to the extent the claim is predicated upon Stearns' failure to disclose facts, Count 4 of the Intervenors' Live Pleading, as currently pled, is subject to dismissal under Federal Rule 12(b)(6) for failing to allege facts that would establish the existence of a duty of disclosure on the part of Stearns if accepted as true.

Finally, in response to Stearns' argument that justifiable reliance cannot be established in the face of the loan agreements, the Debtor Intervenors assert, as before in the context of its common law fraud claim, that justifiable reliance is not a matter to be addressed at the initial pleading stage. Here, however, the situation is different inasmuch as the claim relates to the inducement of the Debtor Intervenors to enter into specific agreements, thereby opening up the dismissal inquiry to the content of those agreements. And if the terms of the agreements negate the possibility of justifiable reliance by the Debtor Intervenors on any particular representation made or any particular fact not disclosed (assuming a duty of disclosure), then the possibility exists

---

[124] *See* Intervenors' Live Pleading, ¶¶ 18-19, 20, 42 and 55-59.

[125] *Iqbal*, 556 U.S. at 678 (emphasis added).

that the claim will be subject to dismissal under Federal Rule 12(b)(6). That said, insufficient grounds have been established by Stearns for such relief because not only is it unclear what particular representations or omissions are at issue (obviously due to the failure of the Debtor Intervenors to plead with particularity), but no particular reliance-nullifying provision of any agreement has been specified by Stearns. Therefore, Stearns' request for dismissal of Count 4 of the Intervenors' Live Pleading on this basis will be denied.

### 3. *Resulting Relief to be Provided to Stearns*

Based upon the foregoing, the Court will deny the Implied Request for Leave to Amend to add Count 4 of the Intervenors' Live Pleading, as currently pled, and grant Stearns' request for dismissal of the Count on the basis of the failure to plead with particularity in violation of Federal Rule 9(b) and on the basis of failing to facially state a plausible claim upon which relief can be afforded under Federal Rule 12(b)(6). In each case, however, the dismissal will be subject to the right of the Debtor Intervenors to replead Count 4 to address the deficiencies noted above.

## C. *Negligent Misrepresentation*

The elements of negligent misrepresentation under Texas law are: (1) a representation made by the defending party in the course of the defending party's business or in a transaction in which the defending party has a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defending party did not exercise reasonable care or competence in obtaining or communicating the information; (4) the claimant justifiably relied on the representation; and (5) the claimant suffered pecuniary loss as a result.[126]

Pursuant to the Live Pleadings, both the Allen Defendants and the Debtor Intervenors have asserted new negligent misrepresentation claims against both the Taylors and Stearns. In the case

---

[126] *Orca Assets GP, LLC*, 546 S.W.3d at 653-54 (citing *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

of the claims against the Taylors, the claims are focused on both (a) the alleged misrepresentations of the Taylors with respect to financial information supplied in connection with the sale, and (b) the alleged misrepresentations of the Taylors with respect to the provision of post-closing business support to the Debtor Intervenors. In the case of the claims against Stearns, the claims are focused on the alleged misrepresentations of Stearns with respect to the nature of the Stearns Loan.

### *The Taylors' Arguments*

**1.    *Federal Rule 12(b)(1) Request for Dismissal***

The Taylors' first argument for dismissal is again that the Allen Defendants lack standing, asserting that the only harm alleged in the Defendants' Live Pleading is to the THEAG Entities. The Court has already found such argument to be unpersuasive given the allegations within the Defendants' Live Pleading with respect to the actual, concrete and particularized harm suffered by the Allen Defendants as a result of the obligations incurred under the Guaranty. Therefore, the Court will deny the Taylors' request to dismiss Count 4 of the Defendants' Live Pleading pursuant to Federal Rule 12(b)(1).

**2.    *Federal Rule 9(b) Request for Dismissal***

Next, the Taylors assert that the THEAG Parties have failed to plead their negligent misrepresentation claims with particularity as required by Federal Rule 9(b). Before turning to the specifics of the argument, the Taylors explain that, while the claims have been presented as negligence claims, Federal Rule 9(b) is nevertheless applicable because "Rule 9(b) applies to a claim for negligent misrepresentation when the fraud and negligent misrepresentation claims are sufficiently intertwined"[127] and, here, the THEAG Parties' fraud and negligent misrepresentation

---

[127] *See* Plaintiffs' Brief, at p.13 (citing *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F.Supp.2d 938, 955-56 (E.D. Tex. 2011)).

claims are allegedly sufficiently intertwined. The THEAG Parties do not dispute this point in responding to the Taylor Motion.

The Fifth Circuit has explained that "[a]lthough Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims [such as where the] fraud and negligent misrepresentation claims are based on the same set of alleged facts."[128] With that in mind, the Court agrees with the Taylors' assessment that the THEAG Parties' negligent misrepresentation claims against the Taylors are predicated upon the same wrongful conduct alleged in support of the THEAG Parties' common law fraud and fraud in the inducement claims against the Taylors. Consequently, given the overlap of factual allegations and the lack of any separate focus on allegations made solely in reference to the negligent misrepresentation claims, the negligent misrepresentation claims must also be pled with particularity in accordance with Federal Rule 9(b).[129]

With that predicate in place, in support of their Federal Rule 9(b) request for dismissal, the Taylors assert that the THEAG Parties "only generally allege that the Taylors 'provided false information relating to the financing for the purchase of the Stores' and 'used false information to guide' the THEAG Parties to close," and that "[t]he only misrepresentations mentioned in the [Live Pleadings] are that the Taylors allegedly misrepresented the value of the FastSigns stores."[130] As such, the Taylors urge dismissal on Federal Rule 9(b) grounds for the failure to plead with particularity. In response, the Allen Defendants take issue with the limited scope of the

---

[128] *Benchmark Elecs., Inc.*, 343 F.3d at 723 (citation omitted).

[129] *See also Lonestar Ladies Inv. Club*, 238 F.3d at 368 ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not").

[130] Plaintiffs' Brief, at p.13.

representations referenced by the Taylors, highlighting additional allegations made with respect to the misrepresented value of the goodwill of the Stores, the manipulated financial data supplied, and the falsified financials delivered, and assert that they have pled their negligent misrepresentation claim with sufficient particularity.[131] While, separately, the Debtor Intervenors fail to respond in a similar (or any meaningful) way, the relevant allegations set forth within the Intervenors' Live Pleading are substantially identical to the allegations set forth within the Defendants' Live Pleading.

Having reviewed the Live Pleadings, while the Court concurs with the Allen Defendants' assertion that the Taylors have given short shrift to the extent of the allegations included within the Defendants' Live Pleading with respect to the Taylors' alleged misrepresentations with respect financial information supplied in connection with the sale, the Taylors accurately point out that there are effectively no substantive allegations made within the Live Pleadings with respect to the alleged misrepresentation made by the Taylors with respect to the financing of the sale.

Even so, ultimately the Court concludes that, inasmuch as the applicability of Federal Rule 9(b) to the THEAG Parties' negligent misrepresentation claims hinges upon the intersection of allegations involving both the negligent misrepresentation and fraud-based claims, then it follows that the Court's evaluation of the THEAG Parties' compliance with Federal Rule 9(b) in relation to the negligent misrepresentation claims should naturally mirror the Court's evaluation of the THEAG Parties' compliance with Federal Rule 9(b) in relation to the fraud-based claims.

Accordingly, to the extent Count 4 of the Defendants' Live Pleading and Count 8 of the Intervenors' Live Pleading are predicated upon the alleged misrepresentations of the Taylors with respect to financial information supplied in connection with the sale, then for the same reasons

---

[131] Defendants' Plaintiff Motion Response, at p.11 (citing Defendants' Live Pleading, ¶¶ 14-17, 21, 24, 26-30, 34-35 and 43-44).

discussed in connection with evaluating the Taylors' request for dismissal on Federal Rule 9(b) grounds of the THEAG Parties' common law fraud claims, the Court will deny the Taylors' request to dismiss Count 4 of the Defendants' Live Pleading and Count 8 of the Intervenors' Live Pleading pursuant to Federal Rule 9(b).  And to the extent Count 4 of the Defendants' Live Pleading and Count 8 of the Intervenors' Live Pleading are predicated upon alleged misrepresentations of the Taylors with respect to the financing of the sale, then for the same reasons discussed in connection with evaluating the Taylors' request for dismissal on Federal Rule 9(b) grounds of the THEAG Parties' fraud in the inducement claims, the Court will deny the Implied Requests for Leave to Amend and grant the request to dismiss Count 4 of the Defendant's Live Pleading and Count 8 of the Intervenors' Live Pleading for failure to plead with particularity under Federal Rule 9(b).

### 3.    Federal Rule 12(b)(6) Request for Dismissal

Finally, with respect to the surviving portions of the negligent misrepresentation claims (*i.e.* involving alleged misrepresentations of the Taylors with respect to financial information supplied in connection with the sale), just as argued in reference to the THEAG Parties' common law fraud claims, the Taylors assert that the claims must be dismissed pursuant to Federal Rule 12(b)(6) because the THEAG Parties cannot establish the element of justifiable reliance given the multiple red flags allegedly encountered in the due diligence process, such as the Taylors' failure to timely produce documents, the delivery of financials showing a significant drop in revenue, threats of a walk away, and the delay in providing access to employees.  In response, the THEAG Parties again emphasize that the determination of whether their alleged reliance on the referenced misrepresentations was justifiable is a fact issue to be determined based upon the evidence instead of at the initial pleading stage.  The Court agrees with the THEAG Parties for the same reasons previously explained in relation to the Taylors' Federal Rule 12(b)(6) justifiable reliance arguments on common law fraud.  Therefore, to the extent that Count 4 of the Defendants' Live

Pleading and Count 8 of the Intervenors' Live Pleading are predicated upon alleged misrepresentations of the Taylors with respect to financial information supplied in connection with the sale, the Implied Requests for Leave to Amend will be granted and the Taylors' request to dismiss pursuant to Federal Rule 12(b)(6) will be denied.

### *Stearns' Arguments*

Stearns requests dismissal of the THEAG Parties' negligent misrepresentation claims under both Federal Rule 9(b) and Federal Rule 12(b)(6).

### 1. *Federal Rule 9(b) Request for Dismissal*

In relation to Federal Rule 9(b), Stearns begins with the same premise urged by the Taylors – namely, that "where fraud and negligent misrepresentation claims rely (as they do in this case) upon the same alleged misrepresentations or non-disclosures, or when the 'fraud claim is so intertwined with the negligent misrepresentation claim that it is not possible to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent misrepresentation claim,' [the] negligent misrepresentation claim[ ] will also be subject to the requirements of Rule 9(b)."[132]   The Debtor Intervenors do not address this argument in their response.   The Allen Defendants, on the other hand, do respond to it.   Having not asserted any fraud-based claims against Stearns, the Allen Defendants argue that Federal Rule 9(b) is not applicable to their negligent misrepresentation claim against Stearns.

The Court agrees with the Allen Defendants.   Even though the Allen Defendants are tied to the Federal Rule 9(b) pleading standard in relation to their negligent misrepresentation claim against the Taylors due to the overlapping fraud-based claims asserted against the Taylors, because the Allen Defendants have not asserted any fraud-based claims against Stearns, the same is not

---

[132] Stearns Defendant Claim Motion, at p.11 (quoting *Benchmark Elecs., Inc.*, 343 F.3d at 723-24); Stearns Intervenor Claim Motion, at pp.13-14 (same).

true with respect to the Allen Defendants' negligent misrepresentation claim against Stearns. Therefore, the Court will deny Stearns' request for dismissal of Count 3 of the Defendants' Live Pleading under Federal Rule 9(b).

In the case of the Debtor Intervenors, on the other hand, because the Debtor Intervenors' negligent misrepresentation and fraud in the inducement claims are based on the same set of alleged facts, Federal Rule 9(b) will apply. Under such framework, Stearns reiterates its prior complaint that there is nothing but generalized allegations of representations being made within the Intervenors' Live Pleading without any specificity as to the actual representations made, the identity of the speaker(s), and in what way the representations were false or "obscured." In their response, the Debtor Intervenors fail to point to any specifics.

Ultimately, here again the Court concludes that its evaluation of the Debtor Intervenors' compliance with Federal Rule 9(b) in relation to their negligent misrepresentation claim against Stearns must naturally line up with the Court's evaluation of the Debtor Intervenors' compliance with Federal Rule 9(b) in relation to their fraud in the inducement claim against Stearns. Consequently, for the same reasons as set forth above in relation to the fraud in the inducement claim, the Court finds that Count 7 of the Intervenors' Live Pleading, as currently pled, fails to comply with the particularity requirements of Federal Rule 9(b) and is subject to dismissal on such basis.

### 2. *Federal Rule 12(b)(6) Request for Dismissal*

Turning next to Stearns' request for dismissal of the THEAG Parties' negligent misrepresentation claims under Federal Rule 12(b)(6), Stearns argues that, given the non-descript nature of the allegations concerning the false representations made by Stearns with respect to SBA guidelines and protections, the status of the Stearns Loan, and loan information, the allegations fail to establish the requisite causal connection between any such representation and any perceived

harm resulting therefrom. The THEAG Parties fail to respond to this argument in any meaningful way in their respective responses.

To state a facially plausible claim for negligent misrepresentation, a claimant must allege sufficient concrete facts to, among other things, establish that the claimant's alleged injury was proximately caused by the claimant's justifiable reliance on the defending party's misrepresentations.[133] "The components of proximate cause are cause in fact and foreseeability."[134] And the foreseeability of a claimant's reliance on a particular misrepresented fact is dependent upon the materiality of the fact allegedly misrepresented.

With the foregoing in mind, to survive dismissal under Federal Rule 12(b)(6), allegations must consist of more than mere labels and conclusions.[135] Yet, nowhere within the Live Pleadings is there anything other than mere labels and conclusions. No concrete details are provided with respect to (a) the representations made with respect to the SBA loan characteristics (*i.e.* the protections and/or advantages) that the Stearns Loan would allegedly have; (b) why or how each of those specific representations was untrue; (c) in exactly what ways the Stearns Loan allegedly did not qualify as an SBA loan; (d) in what way the THEAG Parties reasonably relied upon each such representation; and (e) in what way the THEAG Parties were respectively injured as a result. Consequently, the negligent misrepresentation claims of both the Allen Defendants and the Debtor Intervenors are also subject to dismissal under Federal Rule 12(b)(6) for the failure to state a plausible claim for relief.

---

[133] *See Potter v. HP Texas 1 LLC*, No. 05-18-01513-CV, 2020 WL 1672556, at *7 (Tex. App. – Dallas Apr. 6. 2020, no pet.) (explaining that proximate cause is an essential element of a negligent misrepresentation claim); *Cunningham v. Blue Cross Blue Shield of Tex.*, No. 2-06-363-CV, 2008 WL 467399, at *5 (Tex. App. – Ft. Worth Feb. 21, 2008) ("Proximate cause is the causation standard applicable to claims of … negligent misrepresentation….").

[134] *Collective Asset Partners LLC v. Schaumburg*, 432 S.W.3d 435, 438 (Tex. App. – Dallas 2014, pet. denied) (citing *Affordable Power, LP v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 830 (Tex. App. – Dallas 2011, no pet.)); *see also Cook v. T-Mobile USA, Inc.*, 3:14-CV-2907-P, 2015 WL 11120973, at *2 (N.D. Tex. June 2, 2015).

[135] *Twombly*, 550 U.S. at 555.

### 3. *Resulting Relief to be Provided to Stearns*

Based upon the foregoing, with respect to Count 3 of the Defendants' Live Pleading, the Court will deny Stearns' request for dismissal pursuant to Federal Rule 9(b), but nevertheless deny the Implied Request for Leave to Amend in relation to Count 3 and grant Stearns' request for dismissal of the Count pursuant to Federal Rule 12(b)(6).  With respect to Count 7 of the Intervenors' Live Pleading, the Court will deny the Implied Request for Leave to Amend in relation to Count 7 and grant Stearns' request for dismissal of the Count pursuant to both Federal Rule 9(b) and Federal Rule 12(b)(6).  In each case, however, the dismissals will be subject to the right of the THEAG Parties to replead the Counts to address the deficiencies noted.

### D. *Aiding and Abetting Negligent Misrepresentation*

Pursuant to the Live Pleadings, both the Allen Defendants and the Debtor Intervenors have asserted new claims of aiding and abetting negligent misrepresentation against the Taylors and Stearns.  Previously the THEAG Parties had asserted claims of conspiracy to commit fraud against the Taylors and Stearns and, inasmuch as the conspiracy claims have not been re-pled in the Live Pleadings, it appears that the THEAG Parties have opted to forego the conspiracy claims and replace them with the new aiding and abetting claims.  The Taylors and Stearns request the dismissal of these new claims on a variety of grounds, including pursuant to Federal Rule 12(b)(6) for failure to state a claim.  The Court will grant the request under Federal Rule 12(b)(6) for two reasons.

First, because the Texas Supreme Court has refused to expressly acknowledge the existence of an independent cause of action for aiding and abetting under Texas law,[136] the Fifth Circuit has

---

[136] *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224-25 (Tex. 2017) ("[T]his Court has not expressly decided whether Texas recognizes a cause of action for aiding and abetting….[W]e have never expressly recognized a distinct aiding and abetting cause of action…."); *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996); *see also Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *10 (Tex. App. – Ft.

definitively concluded that no such claim exists under Texas law.[137]  Consequently, based upon controlling Fifth Circuit authority, the Court will dismiss the new aiding and abetting claims for failure to state a cognizable claim.

Second, even if an independent cause of action for aiding and abetting were clearly recognized in Texas, it appears that the elements of such a claim would include (based upon a review of opinions from those Texas courts that have allowed the claim to proceed to trial): (1) the existence of an underlying tort, (2) unlawful intent on the part of the defending party, and (3) substantial assistance and encouragement by the defending party to the tortfeasor.[138]  With that in mind, the Taylors and Stearns argue that the THEAG Parties have failed to allege sufficient facts in relation to such elements to establish a facially plausible claim of aiding and abetting.  The Court agrees.  In particular, the Court notes that nowhere within the Live Pleadings are any details given with respect to the specific assistance and encouragement given by the Allen Defendants to Stearns, and by Stearns to the Allen Defendants, nor is there any specific reference to any knowing, intentional conduct by one to assist and encourage the other in specified tortious conduct.  Instead, the allegations are simply formulaic statements of assistance and encouragement without any substance.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to overcome a Federal Rule 12(b)(6) motion.[139]  Accordingly, each of the aiding and abetting claims is also subject to dismissal on this basis.

---

Worth Oct. 29, 2020, no pet.) ("Texas has not clearly recognized that assisting or encouraging a primary actor's tort is a recognized cause of action independent of a civil conspiracy claim").

[137] *Christopher v. Depuy Orthopaedics, Inc. (In re Depuy Orthopaedics, Inc.)*, 888 F.3d 753, 782 (5th Cir. 2018); *see also Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 800 Fed. Appx. 239, 250 (5th Cir. 2020); *Taylor v. Rothstein Kass & Co., PLLC*, Civil Action No. 3:19-CV-1594-D, 2020 WL 554583, at *5 (N.D. Tex. Feb. 4, 2020).

[138] *See, e.g., Renate Nixdorf GmbH & Co. KG v. TRA Midland Props., LLC*, No. 05-17-00577-CV, 2019 WL 92038, at *5 (Tex. App. – Dallas Jan. 3, 2019, pet. denied); *Bilbrey v. Williams*, No. 02-13-00332-CV, 2015 WL 1120921, at *14 (Tex. App. – Ft. Worth Mar. 12, 2015, no pet.).

[139] *Iqbal*, 556 U.S. at 678.

Therefore, the Court will deny each of the Implied Requests for Leave to Amend in relation to Counts 5 and 6 of the Defendants' Live Pleading and Counts 9 and 10 of the Intervenors Live Pleading and grant the Taylors' and Stearns' respective requests for dismissal of the Counts under Federal Rule 12(b)(6).

### E.    *Promissory Estoppel*

The elements of promissory estoppel under Texas law are: (1) a promise; (2) reliance thereon that was foreseeable to the promisor; and (3) substantial reliance by the promisee to the promisee's detriment.[140]  In relation to the last element, not only must the promisee's reliance be reasonable, but the detriment must be of such a level that enforcement of the promise is necessary to avoid injustice.[141]  "The function of the doctrine of promissory estoppel is … defensive in that it estops a promisor from denying the enforceability of the promise."[142]

Pursuant to the Live Pleadings, both the Allen Defendants and the Debtor Intervenors have asserted new promissory estoppel claims against the Taylors and Stearns.  In the case of the claims against the Taylors, the claims are focused on the Taylors' alleged promise to provide post-closing business support to the Debtor Intervenors.  In the case of the claims against Stearns, the claim is focused on Stearns' alleged promise to provide an SBA loan having particular borrower protections to the Debtor Intervenors.

---

[140] *Universal Truckload, Inc. v. Dalton Logistics, Inc*., 946 F.3d 689, 695 (5th Cir. 2020); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

[141] *See, e.g., Collins v. Walker*, 341 S.W.3d 570, 573-74 (Tex. App. – Houston [14th Dist.] 2011, no pet.); *Sipco Servs. Marine, Inc. v. Wyatt Field Serv. Co*., 857 S.W.2d 602, 605 (Tex. App. – Houston [1st Dist.] 1993, no writ).

[142] *MetroplexCore, LLC v. Parsons Transp., Inc*., 743 F.3d 964, 977 (5th Cir. 2014) (quoting *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965)).

### *The Taylors' Arguments*

**1.**      ***Federal Rule 12(b)(1) Request for Dismissal***

The Taylors' first argument for dismissal is again that the Allen Defendants lack standing, asserting that the only harm alleged in the Defendants' Live Pleading is to the THEAG Entities. While the Allen Defendants do not directly address the assertion in their response, the Court has already found the Taylors' lack of standing arguments to be unpersuasive.  In the case of the Allen Defendants' promissory estoppel claim, the Allen Defendants have alleged in the  Defendants' Live Pleading that the Taylors not only made a promise to the Debtor Intervenors, but also to the Allen Defendants to substantially support both the Debtor Intervenors and the Allen Defendants in both maintaining the current business of the Stores and generating new business.[143]  The Allen Defendants further allege that they relied upon the promise in pushing forward with the sale – and hence executing the Guaranty – and that they can only be made whole by enforcement of the promise.[144]  Thus, through these allegations the Allen Defendants have alleged sufficient actual, concrete and particularized harm to themselves to establish standing.  Therefore, the Court will deny the Taylors' request to dismiss Count 11 of the Defendants' Live Pleading pursuant to Federal Rule 12(b)(1).

**2.**      ***Federal Rule 12(b)(6) Request for Dismissal***

Next, the Taylors assert that the promissory estoppel claims of the THEAG Parties must be dismissed because the THEAG Parties cannot establish the element of reasonable reliance.  In support, they present the same type of reliance argument as detailed above in relation to the fraud-based claims – here, that reliance could not have been reasonable or substantial given the existence

---

[143] *See, e.g.*, Defendants' Live Pleading, ¶ 84.

[144] *See, e.g.*, Defendants' Live Pleading, ¶¶ 28, 87.

of the multiple red flags allegedly encountered by the THEAG Parties in the due diligence process, such as the Taylors' failure to timely produce documents, the delivery of financials showing a significant drop in revenue, threats of a walk away, and the delay in providing access to employees. In response, the THEAG Parties again assert that the Taylors have erroneously skipped past the pleading stage, where the relevant inquiry is whether the THEAG Parties have facially alleged plausible reasonable and substantial reliance, and headed straight to the trial stage, where the reasonableness and substantialness of the alleged reliance are to be tested based upon the evidence presented.

The Court agrees with the THEAG Parties. Pursuant to the Live Pleadings, the THEAG Parties allege that in order to convince the THEAG Parties to close, not only did the Taylors promise to not compete with the Stores, but they also promised to contribute their experience and industry knowledge post-closing to the THEAG Parties to help maintain relationships with current clients and ensure the flow of new clients. According to the Live Pleadings, the support of the Taylors was an intangible benefit and consideration that the THEAG Parties relied upon in closing.[145] As such, the THEAG Parties have each alleged sufficient facts with respect to reasonable and substantial reliance to present a plausible claim of promissory estoppel. Therefore, the Court will grant the Implied Requests for Leave to Amend in relation to Count 11 of the Defendants' Live Pleading and Count 15 of the Intervenors' Live Pleading and deny the Taylors' request to dismiss such Counts pursuant to Federal Rule 12(b)(6).

### ***Stearns' Arguments***

Stearns requests dismissal of the THEAG Parties' promissory estoppel claims under Federal Rule 12(b)(6) for three reasons. First, highlighting allegations within the Live Pleadings

---

[145] *See* Defendants' Live Pleading, ¶ 28; Intervenors' Live Pleading, ¶ 26.

with respect to Stearns' alleged failure to act (*i.e.* the complained of concealment, obfuscation and failure to disclose), Stearns argues that nowhere within the Live Pleadings is there any allegation of an overt promise on the part of Stearns to do anything. Second, Stearns argues that any promise made by Stearns in connection with the Stearns Loan was documented within the integrated loan agreements, thereby negating the enforceability of any other extracontractual promise. Finally, Stearns argues that in order to state an actionable promissory estoppel claim the alleged promise at issue must have been sufficiently definite to be enforced and that in the case of the Live Pleadings, instead of detailing a definitive promise, they at best allege the THEAG Parties' perception about the Stearns Loan and SBA loan characteristics.

In response to Stearns' first argument, the Allen Defendants rebut the argument with reference to the following allegation of an actual, overt promise on the part of Stearns: "Stearns promised … to the Debtors and the [Allen Defendants] that they were being provided an SBA loan. Stearns promised to provide a specific product, an SBA loan affords future protection and modifications if a struggling small business owner comes to need them."[146] The Intervenors' Live Pleading contains a nearly identical allegation with respect to an actual, overt promise: "Stearns promised … to the Debtors and Allens that they were being provided an SBA loan. Stearns promised to provide a specific product, an SBA loan affords future protection and modifications if a struggling small business owner comes to need them."[147] Therefore, given the allegation of an overt promise by Stearns in the Live Pleadings, Stearns' first argument lacks merit.

In response to Stearns' second argument with respect to the existence of integrated loan agreements, the THEAG Parties raise two counterarguments. First, they assert that the loan

---

[146] Defendants' Live Pleading, ¶ 89.

[147] Intervenors' Live Pleading, ¶ 103.

agreements are irrelevant because the promise was entirely separate and outside of the loan documents. Second, the THEAG Parties assert that the claim is not barred by the loan agreements because Federal Rule 8 permits pleading claims in the alternative. The Court disagrees with both counterarguments. With respect to the first counterargument, "[i]f an alleged promise is part of a valid contract, the promisee cannot disregard the contract and sue … under the doctrine of promissory estoppel."[148] Additionally, where an agreement includes a merger or integration clause, whereby the parties agree that the agreement constitutes the parties' final and entire agreement superseding all prior communications with respect to the subject matter of the agreement, then "[e]vidence of [an alleged contrary pre-execution promise] [will be] incompetent as a matter of law to show [the] promise under the parol evidence rule and the integration clause of the [agreement]."[149] With respect to the second counterargument, the THEAG Parties fail to explain why or how pleading in the alternative has anything at all to do with Stearns' contract argument. Even so, in considering Stearns' second argument, the Court is ultimately unable to assess whether the promissory estoppel claims are inconsistent with the loan agreements because (a) the THEAG Parties' allegations with respect to the alleged promise made by Stearns are so vague and ambiguous that it is impossible to evaluate the argument, and (b) Stearns has not referred the Court to any particular loan agreement or integration clause of any particular loan agreement. Therefore, at this stage, the Court will not grant any relief on this basis.

---

[148] *Stable Energy, LP v. Kachina Oil & Gas, Inc*., 52 S.W.3d 327, 336 (Tex. App. – Austin 2001, no pet.) (citing *Guaranty Bank v. Lone Star Life Ins. Co*., 568 S.W.2d 431, 434 (Tex. Civ. App. – Dallas 1978, writ ref'd n.r.e.)).

[149] *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc*., 393 S.W.3d 442, 457 (Tex. App. – Houston [14th Dist.] 2012, pet. filed); *see also Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co*., 376 F.3d 399, 407 (5th Cir. 2004) (where contract is unambiguous and includes an integration clause, then "reliance on extra-contractual representations are unreasonable as a matter of law when the parties' rights and obligations are clearly defined by contract….").

Finally, in relation to Stearns' third argument with respect to the lack of a definitive promise, the THEAG Parties add nothing in their respective responses, merely referring the Court to the same vague reference of a promised "SBA loan afford[ing] future protection and modifications if a struggling small business owner comes to need them"[150] without identifying the particular SBA protections allegedly promised and not provided. "A promise must be sufficiently definite to be enforced through promissory estoppel….Vague and indefinite promises do not suffice."[151] Thus, here, because the THEAG Parties fail to sufficiently identify in the Live Pleadings what SBA loan terms were promised and not provided by Stearns as part of the Stearns Loan, the Live Pleadings fail to state a plausible claim for promissory estoppel, warranting dismissal of the claims under Federal Rule 12(b)(6).

Based upon the foregoing, the Court will deny the Implied Request for Leave to Amend to add Count 12 of the Defendants' Live Pleading and Count 16 of the Intervenors' Live Pleading and grant Stearns' request for dismissal of these Counts for failure to sufficiently state a plausible claim upon which relief can be afforded under Federal Rule 12(b)(6). In each case, however, the dismissal will be subject to the right of the Allen Defendants and Debtor Intervenors to replead the Counts to identify precisely what SBA loan terms were allegedly promised by Stearns to each of them, individually, and not provided as part of the Stearns Loan.[152]

---

[150] Defendants' Live Pleading, ¶ 89; Intervenors' Live Pleading, ¶ 103.

[151] *Dunn v. Citimortgage, Inc.*, No. 4:17-CV-1031-A, 2018 WL 1613826, at *2-3 (N.D. Tex. Apr. 3, 2018) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 360 (5th Cir. 1996), *cert. denied*, 519 U.S. 1078 (1997); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 570 (Tex. App. – Dallas 1989, no writ)).

[152] Because the Allen Defendants allege that the Stearns Loan was made to the Debtor Intervenors, as opposed to the Allen Defendants, *see* Defendants' Live Pleading, ¶ 19, leave to replead will not be granted to the Allen Defendants.

**F.** **Tortious Interference with Existing Contract**

The elements of tortious interference with an existing contract under Texas law are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately cause the claimant's injury; and (4) caused actual damages or loss.[153]

Pursuant to the Intervenors' Live Pleading, the Debtor Intervenors have re-pled their claim of tortious interference with existing contract against the Taylors.  While the Debtor Intervenors continue to summarily refer to the Taylors' alleged interference with existing business relationships and contracts,[154] the claim does now at least add some detail with respect to two relationships – one with the Stars and one with Tucker, an employee.  Nevertheless, the Taylors assert that the Debtor Intervenors have still failed to assert a plausible claim.

For example, the Taylors assert that while the Debtor Intervenors now allege that the Stars stopped using the Debtor Intervenors exclusively on projects and elected to use Chris Taylor for a specific project, and while the Debtor Intervenors now allege that Mr. Taylor routinely spoke with Tucker, completely absent from the Intervenors' Live Pleading is an allegation that the Taylors took any specific action to willfully interfere with the Debtor Intervenors' contractual arrangement with either the Stars or Tucker.  In response, the Debtor Intervenors simply claim that they have sufficiently stated the claim by alleging "how Mr. Taylor actively and tortiously interfered with FastSign's clients, employees, and even FastSigns corporate representatives to undermine the Debtors' business and the relationship with the Dallas Stars."[155]

---

[153] *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *see also Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 813 (5th Cir. 2017); *Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753, 761 n.38 (Tex. 2019).

[154] *See, e.g.*, Intervenors' Live Pleading, ¶ 62.

[155] Intervenors' Plaintiff Motion Response, at p.10 (citing Intervenors' Live Pleading, ¶¶ 29-31, 35-38, and 41).

The problem with the Debtor Intervenors' argument is that, upon close inspection, all of the allegations of the Intervenors' Live Pleading related to the claim consist of nothing more than unsubstantiated conclusory statements that fail to identify any specific wrongful conduct on the part of the Taylors. Several examples highlight this fact. First, while the Debtor Intervenors claim that Mr. Taylor "sabotaged" the business by "destabilizing relationships with long-term clients,"[156] nowhere within the Intervenors' Live Pleading is there any allegation of any specific action taken by Mr. Taylor to cause such "destabilization." Second, while the Debtor Intervenors claim that the Taylors undermined the Debtor Intervenors' relationships and ongoing business "by patiently laying the groundwork to siphon clients from THEAG,"[157] nowhere within the Intervenors' Live Pleading is there any allegation of actual affirmative action taken by the Taylors to illegally "siphon" anything. Third, while the Debtor Intervenors claim that Mr. Taylor "slowly gleaned confidential, proprietary information from his previous employees still working at FastSigns"[158] and that he was in regular contact with Tucker,[159] nowhere within the Intervenors' Live Pleading is there any allegation of any specific illegal action taken by Mr. Taylor to wrongfully acquire any information and nowhere within the Intervenors' Live Pleading is any detail given with respect to any specific "confidential, proprietary information" allegedly acquired. Indeed, the Debtor Intervenors candidly acknowledge that they "are unaware of what exactly Tucker and Mr. Taylor discussed."[160] Finally, while the Debtor Intervenors claim that their exclusive sponsor-based signage arrangement with the Stars came to an end in 2018 and that Mr. Taylor obtained some

---

[156] Intervenors' Live Pleading, ¶ 29.

[157] *Id*.

[158] *See* Intervenors' Live Pleading, ¶ 30.

[159] *See* Intervenors' Live Pleading, ¶ 38.

[160] Intervenors' Live Pleading, ¶ 38.

signage work from the Stars after the end of the two-year non-compete period under the APA,[161] nowhere within the Intervenors' Live Pleading is there any allegation of any actual affirmative action taken by either of the Taylors to cause the Stars to terminate the exclusive sponsor-based signage arrangement with the Debtor Intervenors.  In fact, the Debtor Intervenors concede that the Stars communicated an intention to continue to use the Debtor Intervenors for signage work.[162]

"To avoid dismissal for failure to state a claim, a [claimant] must plead specific facts, not mere conclusory allegations."[163]  Thus, because the Debtor Intervenors have failed to plead any specific facts in support of their conclusory allegations of tortious interference, the Court will grant the Taylors' request for dismissal of Count 5 of the Intervenors' Live Pleading pursuant to Federal Rule 12(b)(6).

## G.   *Tortious Interference with Prospective Business Relations*

The elements of tortious interference with prospective business relations under Texas law are: (1) there was a reasonable probability that the claimant would have entered into a business relationship with a third party; (2) the defending party either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defending party's conduct was independently tortious or unlawful; (4) the interference proximately caused the claimant injury; and (5) the claimant suffered actual damage or loss as a result.[164]

---

[161] *See* Intervenors' Live Pleading, ¶¶ 36-38.

[162] *See* Intervenors' Live Pleading, ¶ 37 (despite the Stars' shift away from an exclusive arrangement in relation to sponsor-based signage projects, Stars representative "explained that the Dallas Stars still intended to use the Debtors on some signage").

[163] *Sapp v. FirstFitness Int'l, Inc.*, Civil Action No. 3:09-CV-1846-N, 2010 WL 11617963, at *2 (N.D. Tex. Aug. 11, 2010) (citing *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003)).

[164] *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 214 (5th Cir. 2018) (citing *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)).

Pursuant to the Intervenors' Live Pleading, the Debtor Intervenors have asserted a new claim for tortious interference with prospective relations against the Taylors. The new claim is predicated upon the Taylors' alleged failure and refusal to provide post-closing business support to the Debtor Intervenors as promised.

The Taylors assert that the Debtor Intervenors have failed to assert a plausible claim for tortious interference with prospective business relations given the Debtor Intervenors' failure to identify a single third party with whom the Taylors prevented the Debtor Intervenors from entering into a business relationship and the Debtor Intervenors' failure to specify any action that the Taylors took in connection with any such third party that constituted an independently actionable tort. In their response, the Debtor Intervenors fail to address these deficiencies, baldly claiming that the Taylors have completely ignored the factual allegations laid out in the Intervenors' Live Pleading.

The Court disagrees with the Debtor Intervenors. Nowhere within the Intervenors' Live Pleading is there an assertion of any affirmative action taken by the Taylors to prevent the Debtor Intervenors from entering into a business relationship with a third party. Instead, as evidenced by the following allegations, the Debtor Intervenors complain about the *inaction* of the Taylors: "The Taylors undermined the Debtors after specifically promising to help the Debtors close new business with pipeline clients ensuring a steady stream of business….The Taylors reassured the Debtors they would help bring in new clients to compensate for the lowered revenue. Once the deal closed, the Taylors walked away with their money in hand."[165] Moreover, nowhere within the Intervenors' Live Pleading do the Debtor Intervenors identify a single prospective business relationship that was lost. Instead, the Debtor Intervenors simply assume that their post-closing

---

[165] Intervenors' Live Pleading, ¶¶ 66-67.

business would have been better with the active support of the Taylors, equating the lack of such promised support to willful and intentional interference on the part of the Taylors.

A viable claim for tortious interference with prospective business relations, however, is dependent upon both the alleged existence of an actual prospective business relationship into which the claimant had a reasonable probability of entering and the alleged independently tortious or unlawful action of the defending party to interfere with that prospective relationship.  Because the Debtor Intervenors fail to adequately allege facts in support of either of these elements of the claim, dismissal of the claim is warranted.  Accordingly, the Court will deny the Implied Request for Leave to Amend in relation to Count 6 of the Intervenors' Live Pleading and grant the Taylors' request for dismissal of the Count pursuant to Federal Rule 12(b)(6).

## H.    Invasion of Privacy

Under Texas law, "[t]here are 'three distinct injuries under the tort of invasion of privacy: (1) intrusion on seclusion, (2) public disclosure of private facts, and (3) appropriation of name or likeness.'"[166]  In the case of the THEAG Parties, only the first two variations are at issue.  The elements of an invasion of privacy–intrusion upon seclusion claim are: (1) an intentional intrusion upon a person's solitude, seclusion, or private affairs or concerns, (2) that would be highly offensive to a reasonable person, and (3) as a result of which the person suffered an injury.[167]  The elements of an invasion of privacy–public disclosure of private facts are: (1) publicity was given to matters concerning one's personal life, (2) publication would be highly offensive to a reasonable

---

[166] *Thomas v. State of Texas*, 294 F.Supp.3d 576, 616 (N.D. Tex. 2018) (quoting *James v. Dallas Police Dep't*, No. 3:12-CV-457-N-BN, 2013 WL 607154, at *4 (N.D. Tex. Feb. 4, 2013) (citing *Cain v. Hearst Corp.*, 878 S.W.2d 577, 579-80 (Tex. 1994), *adopted by* 2013 WL 607153 (N.D. Tex. Feb. 19, 2013)), *adopted by* 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018).

[167] *Wise v. Wilmoth*, No. 3:16-CV-1039-M-BH, 2017 WL 3267924, at *16 (N.D. Tex. July 3, 2017) (citing *Baugh v. Fleming*, No. 03-08-00321-CV, 2009 WL 5149928, at *1 (Tex. App. – Austin 2009, no pet.)), *adopted by* 2017 WL 3267727 (N.D. Tex. July 31, 2017).

person of ordinary sensibilities, and (3) the matter publicized is not of legitimate public concern.[168] "Publicity means that a matter is communicated to the public at large or disseminated to so many people that it becomes public knowledge."[169]

Pursuant to the Live Pleadings, both the Allen Defendants and the Debtor Intervenors have asserted new invasion of privacy claims against both the Taylors and Stearns.

### *The Taylors' Arguments*

### 1.    *Federal Rule 12(b)(1) Request for Dismissal*

The Taylors' first argument for dismissal is focused solely on the Defendants' Live Pleading, in relation to which the Taylors assert that the Allen Defendants lack standing to pursue the claim because the "underpinning of their claim is in reality a harm to the THEAG Entities."[170] The Allen Defendants respond with the assertion that the argument is patently incorrect and that the Defendants' Live Pleading specifically pleads that the claim stems from the Taylors' disclosure of the Allen Defendants' personal financial information.

The Court agrees with the Allen Defendants. The Defendant' Live Pleading alleges that the Taylors obtained confidential financial information with respect to the Allen Defendants from Stearns[171] and then "disclosed [such] non-public, highly sensitive personal financial information to clients and third parties…."[172] Thus, the Allen Defendants have alleged sufficient actual, concrete and particularized harm to themselves to establish constitutional standing with respect to

---

[168] *Thomas*, 294 F.Supp.3d at 616 (citing *Watkins v. Cornell Cos., Inc.*, No. 3:11-CV-260-M-BN, 2013 WL 1914713, at *8 (N.D. Tex. Mar. 15, 2013) (citing *Industrial Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 682 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977)), *adopted by* 2013 WL 1926375 (N.D. Tex. May 8, 2013); *see also Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473-74 (Tex. 1995).

[169] *Watkins*, 2013 WL 1914713, at *8 (citing *Industrial Found. of the South*, 540 S.W.2d at 683-84).

[170] Plaintiffs' Brief, at p.17.

[171] *See* Defendants' Live Pleading, ¶ 78.

[172] Defendants' Live Pleading, ¶ 82.

their invasion of privacy claim against the Taylors. Therefore, the Court will deny the Taylors'

request to dismiss Count 10 of the Defendants' Live Pleading pursuant to Federal Rule 12(b)(1).

### 2. *Federal Rule 12(b)(6) Request for Dismissal*

Next, with respect to both Live Pleadings, the Taylors assert that the THEAG Parties have

failed to allege an invasion of privacy claim for which relief may be granted. First, in the case of

the Debtor Intervenors, the Taylors assert that Texas courts have not recognized a business entity's

right to privacy; therefore, there can be no claim for invasion of privacy in favor of such an entity.

The Debtor Intervenors, all limited liability companies, fail to respond directly to this assertion

and none of the cases cited by the Debtor Intervenors in relation to invasion of privacy rebuts the

Taylors' assertion. In fact, it appears that at least four different Texas courts of appeal have

acknowledged that "[n]o Texas authority has recognized a [business entity's] right of privacy."[173]

Consequently, the Court will deny the Implied Request for Leave to Amend in relation to Count

14 of the Intervenors' Live Pleading and grant the Taylors' request to dismiss the Count pursuant

to Federal Rule 12(b)(6).

With respect to the Allen Defendants' claim, the Taylors assert that the private information

allegedly publicized only involved the THEAG Entities. As indicated above, however, the Allen

Defendants have correctly noted their allegations with respect to the Taylors' disclosure of the

Allen Defendants' personal financial information.

---

[173] *Doggett v. Travis Law Firm, P.C.*, 555 S.W.3d 127, 130 (Tex. App. – Houston [1st Dist.] 2018, pet. denied); *see also Abbott v. GameTech Int'l, Inc.*, No. 03-06-00257-CV, 2009 WL 1708815, at *7 (Tex. App. – Austin June 17, 2009, pet. denied) ("There is no Texas authority recognizing a right to privacy on the part of a corporation, and we decline to recognize one here"); *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 135 S.W.3d 365, 395 (Tex. App. – Houston [14th Dist.] 2004) ("there is no Texas authority recognizing a corporation's right to solitude, seclusion, or privacy, and we decline to recognize one here"), *rev'd on other grounds*, 184 S.W.3d 707 (Tex.), *cert. denied sub nom. Kosoy v. GTE Mobilnet of Houston, Inc.*, 548 U.S. 906 (2006); *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App. – Dallas 2001, no pet.) ("there is no Texas authority granting corporations a right of privacy").

Thus, turning to the sufficiency of the allegations made, it is necessary to consider each of the two possible types of the claim asserted by the Allen Defendants.  First, in considering the plausibility of an intrusion upon seclusion claim, the Court notes that nowhere within the Defendants' Live Pleading is there an allegation that the Taylors, themselves, took affirmative action to intrude upon the Allen Defendants' solitude, seclusion, or private affairs or concerns.  Instead, the Allen Defendants allege that it was Stearns who invaded the Allen Defendants' privacy by obtaining and disclosing confidential financial information to the Taylors.[174]  Therefore, the Allen Defendants have not alleged a plausible invasion of privacy–intrusion upon seclusion claim.

Second, in considering the plausibility of a public disclosure of private facts claim, the Court notes that nowhere within the Defendants' Live Pleading is there an allegation that the Taylors communicated any information concerning the Allen Defendants to the public at large or that they disseminated it to so many people that it became public knowledge.  Instead, the Defendants' Live Pleading baldly alleges without any detail that the Taylors disclosed certain non-specified personal information of the Allen Defendants to certain unidentified clients and other third parties.[175]  This fails to plausibly state an actionable invasion of privacy–public disclosure of private facts claim.  While "[t]he plausibility standard is not akin to a 'probability requirement,' [ ] it asks for more than a sheer possibility that a [defending party] has acted unlawfully."[176]

Consequently, the Court will deny the Implied Request for Leave to Amend in relation to Count 10 of the Defendants' Live Pleading and grant the Taylors' request to dismiss the Count pursuant to Federal Rule 12(b)(6).

---

[174] *See* Defendants' Live Pleading, ¶¶ 18, 21 and 78-79.

[175] *See* Defendants' Live Pleading, ¶¶ 81-82.

[176] *Iqbal*, 556 U.S. at 678.

### *Stearns' Arguments*

Stearns' basic argument for dismissal of the THEAG Parties' invasion of privacy claims is that the THEAG Parties have failed to allege sufficient facts to plausibly state any such claim for relief. Stearns points out, for example, that nowhere within the Live Pleadings do the THEAG Parties identify what was allegedly disclosed by Stearns, by whom at Stearns, why or how it violated the THEAG Parties' respective rights, and how it caused any harm. At a minimum, Stearns requests that the THEAG Parties be required under Federal Rule 12(e) to replead the claims to provide details with respect to these matters. In response, while both of the THEAG Parties claim to have sufficiently pled their invasion of privacy claims, neither of them points to any details within the Live Pleadings. Thus, once again the Court is effectively left to independently assess the allegations.

First, as previously indicated, Texas courts have not recognized a business entity's right to privacy; thus, the Debtor Intervenors have failed to state an invasion of privacy claim against Stearns for which relief may be afforded. Consequently, the Court will deny the Implied Request for Leave to Amend in relation to Count 13 of the Intervenors' Live Pleading and grant Stearns' request to dismiss the Count pursuant to Federal Rule 12(b)(6).

Turning next to the Allen Defendants' claim, first, in the case of an intrusion upon seclusion claim, while the Defendants' Live Pleading is clearly barren of detail, the allegations do assert that Stearns intruded upon the Allen Defendants' private affairs or concerns by obtaining and then disclosing to the Taylors certain "non-public, highly sensitive personal information" of the Allen Defendants.[177] What is unclear from such allegations, however, as highlighted by Stearns, is (a) the nature of the confidential financial information obtained by Stearns, (b) whether Stearns was

---

[177] *See* Defendants' Live Pleading, ¶¶ 18, 21 and 78-79.

an authorized or unauthorized recipient of such information, and (c) in what way(s) the disclosure of such information to the Taylors was both offensive and caused injury.  Such factual detail is necessary to state a facially plausible claim.  Because the Defendants' Live Pleading fails to include any factual detail with respect to such critical matters, the Defendants' Live Pleading, in its current form, fails to plausibly state an invasion of privacy–intrusion upon seclusion claim.  However, the Court finds sufficient cause to provide the Allen Defendants with an opportunity to replead the claim.

Second, in considering the plausibility of a public disclosure of private facts claim, the Court notes that nowhere within the Defendants' Live Pleading is there an allegation that Stearns communicated any information concerning the Allen Defendants to the public at large or that Stearns disseminated it to so many people that it became public knowledge.  Instead, the Defendants' Live Pleading alleges that Stearns only disclosed the Allen Defendants' private financial information to the Taylors.[178]  Consequently, the Defendants' Live Pleading fails to plausibly state an actionable invasion of privacy–public disclosure of private facts claim.

For the foregoing reasons, the Court will deny the Implied Request for Leave to Amend to add Count 9 of the Defendants' Live Pleading, as currently pled, and grant Stearns' request for dismissal of the Count for failure to sufficiently state a plausible claim upon which relief can be afforded under Federal Rule 12(b)(6).  The dismissal, however, will be subject to the right of the Allen Defendants to replead Count 9 to address the deficiencies noted above, but only insofar as involving the invasion of privacy–intrusion upon seclusion claim.

---

[178] *See* Defendants' Live Pleading, ¶¶ 18, 21 and 78-79.

## I. *Money Had and Received and Unjust Enrichment*

Under Texas law, there is substantial overlap in the legal doctrines of money had and received and unjust enrichment. In one recent opinion, for example, the Fifth Circuit quoted Texas caselaw for the proposition that a claim of money had and received "belongs conceptually to the doctrine of unjust enrichment."[179] In another recent opinion, the District Court for the Northern District of Texas, relying upon other Texas caselaw, stated that "Texas courts have read claims for 'unjust enrichment' as pleading an equitable common law claim for money had and received."[180] Whether money had and received is part of the family of unjust enrichment claims, unjust enrichment is part of the family of money had and received claims, or money had and received and unjust enrichment are two entirely independent and distinct claims, one things is clear – "the two claims are substantively identical."[181]

"A legal 'action for money had and received arises when [the defending party] obtains money which in equity and good conscience belongs to the [claimant]."[182] As explained by the Texas Supreme Court, "a cause of action for money had and received is 'less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the [defending party] holds money which … belongs to the [claimant].'"[183]

---

[179] *Midwestern Cattle Mktg., LLC*, 800 Fed. Appx. at 245 (quoting *Edwards v. Mid-Continent Office Distribs., LP*, 252 S.W.3d 833, 837 (Tex. App. – Dallas 2008, pet. denied) (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. – El Paso 1997, no pet.))).

[180] *Janvey v. Alguire*, Civil Action No. 3:09-CV-0724-N-BG, 2018 WL 4335677, at *4 (N.D. Tex. Sept. 11, 2018) (citing *London v. London*, 192 S.W.3d 6, 12-14 (Tex. App. – Houston [14th Dist.] 2005, pet. denied)).

[181] *Janvey*, 2018 WL 4335677, at *4.

[182] *Midwestern Cattle Mktg., LLC*, 800 Fed. Appx. at 245 (quoting *Amoco Prod. Co.*, 946 S.W.2d at 164)); *see also Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951).

[183] *Staats*, 243 S.W.2d at 687 (quoting *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 402-03 (1934)).

Assuming unjust enrichment exists as an independent cause of action under Texas law,[184] to establish a claim for unjust enrichment a clamant must establish that the defending party "obtained a benefit from the [claimant] by fraud, duress, or the taking of an undue advantage."[185] "The doctrine is based on the equitable principle that one who receives benefits, even passively, which would be unjust to retain ought to make restitution for those benefits."[186]

Pursuant to the Live Pleadings, both the Allen Defendants and the Debtor Intervenors have asserted new claims for money had and received and unjust enrichment against the Taylors. The money had and received claims are predicated upon the Taylors' alleged promise to provide post-closing business support to the Debtor Intervenors. The unjust enrichment claims are more expansively predicated on not only the Taylors' alleged promise to provide post-closing business support, but also on the Taylors' alleged actions in providing and withholding financial information from the THEAG Parties, in making misrepresentations with respect to the financing of the sale, and in disclosing confidential information of the THEAG Parties.

The Taylors present somewhat similar arguments for dismissal of both types of claims. First, in the case of money had and received, the Taylors assert that the Live Pleadings are deficient in failing to specifically identify any funds that the Taylors have allegedly obtained that in equity and good conscience belong to the Allen Defendants and/or the Debtor Intervenors, as applicable.

---

[184] The Taylors argue that unjust enrichment is not an independent cause of action, but rather an equitable remedy that may be pursued in connection with other recognized causes of action. In this regard, the Fifth Circuit has recognized that Texas courts are split on the question of whether unjust enrichment constitutes an independent cause of action. *See, e.g., BBX Operating, LLC v. Bank of America, N.A. (In re Connect Transp., LLC)*, 825 Fed. Appx. 150, 154 & n.2 (5th Cir. 2020); *Elias v. Pilo*, 781 Fed. Appx. 336, 338 & n.3 (5th Cir. 2019). In *HECI Exploration Co.v. Neel*, 982 S.W.2d 881 (Tex. 1998), for example, the Texas Supreme Court referred to unjust enrichment as both a remedy and a cause of action. *See id.* at 891. Thus, for purposes of the motions currently pending before the Court, the Court will assume that unjust enrichment can be alleged as an independent cause of action under Texas law.

[185] *BBX Operating, LLC*, 825 Fed. Appx. at 154 (quoting *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010) (quoting *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992))).

[186] *Walker v. Walker*, No. 14-16-00357-CV, 2017 WL 1181359, at *8 (Tex. App. – Houston [14th Dist.] Mar. 30, 2017, no pet.) (citing *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App. – Corpus Christi 2002, pet. denied)).

In response, the THEAG Parties identify the funds as the loan proceeds from the Stearns Loan. The Debtor Intervenors also add that the funds include revenues from the Taylors' alleged tortious interference with the Debtor Intervenors' contracts. Both arguments lack merit.

First, in reference to the Stearns Loan proceeds, nowhere within the Live Pleadings do the THEAG Parties allege as the basis for their money had and received claims any facts involving the Stearns Loan. As indicated above, the claims are solely predicated on the Taylors' alleged failure to provide post-closing business support to the Debtor Intervenors. Moreover, even if the Stearns Loan proceeds had been referenced, there are no allegations of any loan proceeds having been paid directly to the Taylors. The THEAG Entities purchased the Business from the *Taylor Entities*, not the Taylors. Second, with respect the Debtor Intervenors' reliance upon allegations of tortious interference, the Debtor Intervenors have failed to allege a plausible claim for tortious interference as previously explained. Therefore, there is similarly no plausible basis for recovery under a theory of money had and received for tortious interference.

For these reasons, the Court will deny the THEAG Parties' respective Implied Requests for Leave to Amend to add Count 7 of the Defendants' Live Pleading and Count 11 of the Intervenors' Live Pleading and grant the Taylors' request for dismissal of the Counts pursuant to Federal Rule 12(b)(6).

Turing to unjust enrichment, the Taylors assert that the Live Pleadings are deficient for failing to specifically identify any benefit that the Taylors obtained from the THEAG Parties by fraud, duress or the taking of an undue advantage that the Taylors should be ordered to repay to the THEAG Parties in restitution. The Debtor Intervenors make no attempt to point to any specific benefit in their response. The Allen Defendants, however, once again point to the loan proceeds from the Stearns Loan. Additionally, both the Debtor Intervenors and the Allen Defendants assert that they should not be required to point to any particular benefit now, claiming instead that the

sufficiency of the allegations should be determined at the summary judgment stage instead of at the initial pleading stage. Each of these arguments lacks merit.

Focusing first on the Allen Defendants' reference to the Stearns Loan, the only reference to the loan in relation to the Allen Defendants' unjust enrichment claim is that the Taylors "negligently misrepresented the true facts about the status of Stearns' SBA loan."[187] Nowhere within the Defendants' Live Pleading, however, is there any allegation that the Taylors directly received any of the Stearns Loan proceeds, nor is there any allegation as to why any such loan proceeds would be repayable to the Allen Defendants in restitution. Second, contrary to the THEAG Parties' procedural argument with respect to the timing of consideration of the viability of the alleged unjust enrichment claims, the plausibility of a stated cause of action is an appropriate matter for determination at the initial pleading stage under Federal Rule 12(b)(6) if timely urged by motion. Here, the Taylors have timely urged dismissal of the unjust enrichment claims under Federal Rule 12(b)(6).

Consequently, in considering the plausibility of the claims as alleged, while the THEAG Parties somewhat casually lay out a laundry list of alleged wrongful conduct on the part of the Taylors in the Live Pleadings in support of their unjust enrichment claims – namely, the Taylors' alleged negligent misrepresentation of the true facts about the status of the Stearns Loan, negligent misrepresentations with respect to the pre-closing condition of the Business, unfulfilled promise to provide post-closing business support to the Debtor Intervenors, and invasion of the Debtor Intervenors' privacy[188] – nowhere within the Live Pleadings do the THEAG Parties identify the specific benefit obtained by the Taylors by virtue of such conduct and the factual basis for the

---

[187] Defendants' Live Pleading, ¶ 76.

[188] As previously indicated, the Debtor Intervenors do not have a recognized common law right of privacy under Texas law. Therefore, this ground would not serve as a basis for recovery even if some benefit were alleged.

benefit's repayment to the Allen Defendants and/or Debtor Intervenors, as applicable, in restitution.[189] "A key element of unjust enrichment is that the person sought to be charged wrongly secured or passively received a benefit."[190] Thus, the failure to allege any particular benefit causes the claims to be facially implausible.

For all of these reasons, the Court will deny the THEAG Parties' Implied Requests for Leave to Amend to add Count 8 of the Defendants' Live Pleading and Count 12 of the Intervenors' Live Pleading and grant the Taylors' request for dismissal of the Counts pursuant to Federal Rule 12(b)(6).

## J.      *Breach of Duty of Good Faith and Fair Dealing*

In Texas, "[t]here is no general duty of good faith and fair dealing in ordinary, arms-length commercial transactions."[191] "The Texas Supreme Court has recognized a common-law duty of good faith and fair dealing only where a 'special relationship' exists between the parties,"[192] such as in a fiduciary or confidential relationship.[193] In *Arnold v. National County Mutual Fire Insurance Co.*, the Texas Supreme Court also found the duty to be owed by insurers to insureds given an insurer's exclusive control over the evaluation, processing and denial of claims and, thus, unequal bargaining power in an insurance relationship.[194] Texas courts have been reluctant to find

---

[189] *See* Defendants' Live Pleading, ¶ 76; Intervenors' Live Pleading, ¶ 90.

[190] *Clapper v. American Realty Investors, Inc.*, Civil Action No. 3:14-CV-2970-D, 2015 WL 3504856, at *8 (N.D. Tex. June 3, 2015) (quoting *Ahmed v. Shah*, No. 01-13-00995-V, 2015 WL 222171, at *5 (Tex. App. – Houston [1st Dist.] Jan. 15, 2015, no pet.)).

[191] *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 51 (Tex. 1998) (citing *English*, 660 S.W.2d at 522); *see also Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 545 (Tex. 1998).

[192] *Electro Assocs., Inc. v. Harrop Constr. Co., Inc.*, 908 S.W.2d 21, 22 (Tex. App. – Houston [1st Dist.] 1995, writ denied) (citing *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)); *see also Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992).

[193] *See, e.g., Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App. – Houston [14th Dist.] 1998, pet. denied).

[194] *See Arnold*, 725 S.W.2d at 167.

any other type of commercial relationship to qualify as the type of "special relationship" that would warrant imposition of the duty as a freestanding, extra-contractual duty.  As explained by one Texas court, "[a]bsent an *Arnold* 'special relationship,' the duty to act in good faith is contractual in nature and its breach does not amount to an independent tort."[195]  Where a common law duty of good faith and fair dealing does exist, the duty "merely requires the parties to deal fairly with one another."[196]

Pursuant to the Live Pleadings, both the Allen Defendants and the Debtor Intervenors have asserted a new claim for breach of the duty of good faith and fair dealing against the Taylors.  The claims are predicated upon on the Taylors' alleged misrepresented promise to provide post-closing business support to the Debtor Intervenors.

The Taylors assert that dismissal of the THEAG Parties' claims for breach of the duty of good faith and fair dealing is required because neither of the THEAG Parties has alleged the existence of the type of "special relationship" under which the duty would be imposed.  In response, the Allen Defendants claim that they have sufficiently alleged such a special relationship by alleging that the Taylors promised to assist in developing the business of the Debtor Intervenors and by alleging that the Taylors threatened to walk away with the Earnest Money Deposit in the absence of closing the sale.  The Debtor Intervenors take a slightly different tack, claiming that they have sufficiently alleged a special relationship by alleging that the Taylors held themselves out to the Debtor Intervenors as being able to assist the Debtor Intervenors in developing the business of the Debtor Intervenors and the Allen Defendants.

---

[195] *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 481 (Tex. App. – Corpus Christi 1989, writ denied).

[196] *Stewart*, 967 S.W.2d at 442.

In each case, the Court finds that the allegations fail to allege the type of special relationship that has been recognized under Texas law to create an extra-contractual common law duty of good faith and fair dealing. At their core, the allegations simply assert that the THEAG Parties closed on the sale based upon the trust that they placed in the Taylors and their reliance on the Taylors' promise to provide post-closing business support. In a commercial setting, however, "[a] business entity's trust of another and its reliance on the other's contractual promise to perform the contract do not, of themselves, engender a special relationship."[197] Accordingly, the Court will deny the Implied Requests for Leave to add Count 13 of the Defendants' Live Pleading and Count 17 of the Intervenors' Live Pleading and grant the Taylors' request for dismissal of the Counts pursuant to Federal Rule 12(b)(6).

## CONCLUSION

For all of the foregoing reasons, the Court will provide the following relief:

1.    The Court will grant in part, and deny in part, the Taylor Motion, as follows:

    (a)    In relation to Count 5 of the Intervenors' Live Pleading, the Court will grant the Taylor Motion and said Count will be dismissed with prejudice;

    (b)    In relation to Counts 5, 7, 8, 10 and 13 of the Defendants' Live Pleading and Counts 6, 9, 11, 12, 14 and 17 of the Intervenors' Live Pleading, the Court will deny the Implied Requests for Leave to Amend and grant the Taylor Motion, with said Counts to be dismissed with prejudice;

    (c)    In relation to Count 2 of the Defendants' Live Pleading and Count 3 of the Intervenors' Live Pleading: (i) the Court will deny the Implied Requests for Leave to Amend and grant the Taylor Motion to the extent said Counts are predicated on the Taylors' alleged misrepresentations and omissions with respect to the financing of the sale, with said Counts to be dismissed with prejudice to such extent; and (ii) the Court will grant the Implied Requests for Leave to Amend and deny the Taylor Motion to the extent said Counts are predicated on the Taylors' alleged misrepresentations of post-closing support to be provided to the Debtor Intervenors;

---

[197] *Electro Assocs., Inc*., 908 S.W.2d at 23; *see also Central Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 240 (Tex. App. – Dallas 1992, no writ) ("Because one business entity trusts another and relies on their contractual promise to perform the contract does not cause a special relationship").

(d)     In relation to Count 4 of the Defendants' Live Pleading and Count 8 of the Intervenors' Live Pleading: (i) the Court will deny the Implied Requests for Leave to Amend and grant the Taylor Motion to the extent said Counts are predicated on alleged misrepresentations of the Taylors with respect to the financing of the sale, with said Counts to be dismissed with prejudice to such extent; and (ii) the Court will grant the Implied Requests for Leave to Amend and deny the Taylor Motion to the extent said Counts are predicated on alleged misrepresentations of the Taylors with respect to financial information supplied in connection with the sale;

(e)     In relation to Count 11 of the Defendants' Live Pleading and Count 15 of the Intervenors' Live Pleading, the Court will grant the Implied Requests for Leave to Amend and deny the Taylor Motion; and

(f)     In relation to Count 1 of the Defendants' Live Pleading and Count 2 of the Intervenors' Live Pleading, the Taylor Motion will be denied.

2.     The Court will grant in part, and conditionally grant in part subject to the right to replead, the Stearns Defendant Claim Motion, as follows:

(a)     In relation to Count 6 of the Defendants' Live Pleading, the Court will deny the Implied Request for Leave to Amend and grant the Stearns Defendant Claim Motion, with said Count to be dismissed with prejudice;

(b)     In relation to Counts 3 and 12 of the Defendants' Live Pleading, the Court will deny the Implied Requests for Leave to Amend and conditionally grant the Stearns Defendant Claim Motion subject to the right of the Allen Defendants to replead said Counts to remedy the deficiencies noted above, with the Counts to be deemed dismissed with prejudice in the absence of timely repleading; and

(c)     In relation to Count 9 of the Defendants' Live Pleading: (i) to the extent said Count purports to assert an invasion of privacy–public disclosure of private facts claim, the Court will deny the Implied Request for Leave to Amend and grant the Stearns Defendant Claim Motion, with the Count to be dismissed with prejudice to such extent; and (ii) to the extent said Count purports to assert an invasion of privacy–intrusion upon seclusion claim, the Court will deny the Implied Request for Leave to Amend and conditionally grant the Stearns Defendant Claim Motion subject to the right of the Allen Defendants to replead the Count to remedy the deficiencies noted above, with the Count to be deemed dismissed with prejudice in the absence of timely repleading.

3.     The Court will grant in part, and conditionally grant in part subject to the right to replead, the Stearns Intervenor Claim Motion, as follows:

(a)    In relation to Counts 10 and 13 of the Intervenors' Live Pleading, the Court will deny the Implied Requests for Leave to Amend and grant the Stearns Intervenor Claim Motion, with said Counts to be dismissed with prejudice; and

(b)    In relation to Counts 4, 7 and 16 of the Intervenors' Live Pleading, the Court will deny the Implied Requests for Leave to Amend and conditionally grant the Stearns Intervenor Claim Motion subject to the right of the Debtor Intervenors to replead said Counts to remedy the deficiencies noted above, with said Counts to be deemed dismissed with prejudice in the absence of timely repleading.

The Court will separately enter orders on the Taylor Motion, Stearns Defendant Claim Motion and Stearns Intervenor Claim Motion in conformity herewith.

### # # #   END OF MEMORANDUM OPINION   # # #